# Exhibit 1

## EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (the "**Agreement**") is made and entered into as of the 1st day of May, 2011 (the **Effective Date**"), by and between **Odeon Capital Group LLC,** a Delaware limited liability company with offices at 750 Lexington Ave, 26th Floor, New York, New York 10022. (The "**Employer**" or the "**Company**"), and **Bret Ackerman** ("**Employee**").

## W I T N E S S E T H:

**WHEREAS**, the Employer wishes to employ Employee, and the Employee wishes to accept such employment, in accordance with the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual promises and covenants contained herein, it is agreed as follows:

### I.  **Employment**

Employer hereby employs Employee, and Employee hereby accepts such employment, as a Senior Vice President. Employee shall have the general duties associated with trading, buying, selling, marketing including all responsibilities, regulatory and otherwise, implied therein, related to sales and trading of Residential Mortgage Backed Securities ("RMBS") and other duties as assigned by his superiors in their full discretion reasonably exercised from time to time.

Employee will perform such duties as may be assigned to Employee consistent with his position and shall perform his duties and discharge his responsibilities faithfully, diligently and to the best of his ability, devoting his full business time, attention and energies to the business of the Employer, and, while employed, shall not engage in any other business activity. The Employee shall comply at all times with all applicable laws and regulations governing the Employer's business and Employee's duties, including, but not limited to, all applicable regulations promulgated by the Securities Exchange Commission, the Financial Industry Regulatory Authority and the Financial Service Authority. The principal location for the performance by Employee of his duties shall be the Company's offices to be determined in New York, NY.

### II.  **Term**

The Employee's employment agreement will begin immediately and shall continue until terminated in accordance with Article VII of this Agreement (the "**Term**"). This agreement supersedes any other agreement, verbal or otherwise that has been previously discussed, proposed or constituted. Employee represents that he is bound by no restrictions, contractual or otherwise, precluding him from employment with Employer as of the beginning of the Term or from carrying out of any of his duties during the Term.

### III.  **Compensation.**

A.     **Sales Commission**.  The Employer shall pay to the Employee a sales commission of when the Employee represents one side of or two sides of executed trade. Commission is payable to the Employee in accordance with the normal payroll practices of the Employer as are in effect from time to time. The sales commission will be paid on total monthly gross revenues, reset monthly, generated by Employee as indicated below:

| Gross Revenues Generated | Commission earned "One-sided trade" | Commission earned "Two-sided trade" |
|---|---|---|
| Up to $200,000 per month | 20% | 40% |
| Between $200,001 and $400,000 per month | 22.5% | 45% |
| Between $400,000 and $1,000,000 per month | 25% | 50% |
| Between $1,000,001 and $2,000,000 per month | 27.5% | 55% |
| Above $2,000,000 | 30% | 60% |

B.     **RMBS Bonus**  Employee shall earn a monthly bonus on total revenues generated through RMBS trading of the Company, reduced by Sales Commissions, if any, paid to Employee on those same revenues, at 2.5% of total RMBS monthly revenues of the Company if RMBS monthly revenues are below $500,000, and 5.0% of total RMBS revenues of the Company for all monthly revenues at $500,000 and above, payable to the Employee in accordance with the normal payroll practices of the Employer as are in effect from time to time.

C.     **Withholding**  Notwithstanding anything contained herein to the contrary, all payments made by Employer to Employee shall be subject to withholding and to such other deductions as shall at the time of such payment be required under any income tax  or other law, whether of the United States or any other jurisdiction, as determined by Employer.    In connection therewith, Employer shall have the right to withhold and deduct applicable federal, state, or local income or other taxes from any payment, in whatever form, made to Employee.

IV.    **Benefits.**

Employee shall be entitled to participate in all benefit plans established by Employer for its employees when such policies are completed and adopted by the Company, including the Employer's group medical and other insurance plans, subject to the provisions of the plan documents of each.  Except as expressly stated, nothing contained herein shall require Employer to establish, or thereafter maintain, any benefit plan.  Employee shall also be entitled to any

benefit or perk that Senior Management establishes for themselves beyond plans created for Employees.

## V.  **Time Off.**

In addition to any paid holidays pursuant to which the office is closed, Employee shall receive vacation time in accordance with the Employer's policies, when such policies are completed and adopted by the Company.  The use of vacation days shall be scheduled by Employee in good faith so as to not unreasonably interfere with Company operations, and after consultation with Employer.

## VI.  **Expenses**

Employer shall reimburse Employee for travel and other business expenses reasonably incurred by Employee pursuant to the Employer's policies, when such policies are completed and adopted by the Company.  Employer's payments hereunder shall be made within a reasonable time following its receipt of such evidence of expenditure(s).

## VII.  **Termination**

This offer of employment is not an employment contract, and does not represent a guarantee of continued employment for any period of time. Employment with Employer is "employment at will." Employer or Employee may terminate this Agreement at any time.

### A.  **Termination with Cause or By the Employee**

If at any time during the Term, the Employer terminates the Employee's employment for Cause (as defined below), or if the Employee terminates his employment for any reason or for no reason, the Employer shall pay to Employee an amount equal to (a) all earned, but unpaid Performance Based Compensation (Sales Commissions and RMBS Bonus) through the date of such termination, if any; and (b) any properly submitted but unpaid expenses consistent with Section VI (together, the "**Accrued Obligations**"), which will be paid to Employee on the next scheduled payroll date after the termination of Employee's employment. Employer will have no further financial obligation to Employee following payment of the Accrued Obligations.

### B.  **Termination Without Cause**      If at any time during the Term, the Employer terminates the Employee's employment without Cause, the Employer shall pay to the Employee an amount equal to the Accrued Obligations.

C.    **Termination by Death or Disability**

This Agreement shall terminate on the date of Employee's death or, at the election of the Employer, upon the "Disability" of Employee. For purposes of this Agreement, "Disability" shall mean the inability of Employee, due to a physical or mental disability, for a continuous period of one hundred eighty (180) consecutive days, to perform the essential functions of Employee's position as set forth in this Agreement. If Employee's employment terminates by reason of her death, or if Employee's employment is terminated by reason of Employee's Disability, the Employer shall pay to Employee's estate or to Employee, as applicable, the same payments as delineated in Section B, above.

D.    **Definition of Cause**

For the purposes of this Agreement, "cause" shall mean: (i) a material violation of federal, state or local securities laws, rules, or regulations; (ii) a material violation of any rules or regulations of any regulatory or self-regulatory organization (SRO); (iii) a material violation of any Employer policy which Employee either knows of or should know of, that could reasonably result in material harm to Employer or could reasonably result in harm to its reputation or its employees; (iv) a conviction or a plea of nolo contendre to such criminal conduct that could either result in Employee's statutory disqualification or could reasonably result in material harm to Employer or could reasonably result in harm to its reputation; (v) criminal, illegal, dishonest, immoral or unethical conduct reasonably related to Employee's employment; (vi) a suspension, bar or limitation on Employee's activities for Employer by any regulatory or self-regulatory organization; (vii) failure to maintain license(s) and required registration(s); (vii) engaging in gross misconduct in connection with Employee's employment; (ix) refusal to comply or failure to comply with reasonable directions or procedures as stated by Employee's superiors or (x) material breach of this Agreement.

VIII.    **Confidential Information.**

Employee acknowledges that, during the term of Employee's employment with the Company, Employee will have access to unpublished and otherwise confidential information ("Confidential Information"), both of a technical and non-technical nature, relating to the business of the Company its actual or anticipated business, research or development, its technology or the implementation or exploitation thereof. Confidential Information includes, but is not limited to, Company's business plans (both current and under development), data, investor list and information, promotional and marketing programs and strategies, research or development, information pertaining to trading, processes, codes, system designs, system specifications, techniques, computer programs, applications developed by or for Company, projections, financial information, costs, revenues, profits, investments, analysis, potential investors, personal information concerning other employees of the Company, business methods and models, trade secrets, databases, simulation software, trading systems, mathematical models and programs, algorithms, numerical techniques, procedural guidelines, knowledge of the Company's facilities, supervisory and risk control techniques and procedures, fee and compensation structures, or other confidential, secret or proprietary information and any other

Confidential Information relating to the business affairs of Company or its clients. However, Confidential Information does not include the following:

i.      Information that Employee can demonstrate, is, as of the time that it is disclosed, or that later becomes, without breach of this Agreement, part of the public knowledge or literature; or

ii.      Information that Employee can show is rightfully in the possession of Employee prior to and independently of the disclosure of same to Employee by the Company; or

iii.      Information that Employee can show is or has been furnished to Employee on a non-confidential basis by any third party having a lawful right to make such disclosure and without breach by such third party of any obligation of confidentiality owed to the Company, so long as such disclosure does not violate Employee's duty of loyalty to the Company during his employment;

iv.      Any information that is generally known to the public or the financial services industry, or available from companies providing information to the financial services industry, other than as a result of Employee's unauthorized disclosure; or

v.      Customer information.

A.      During the period of Employee's employment with the Company or at any time thereafter, Employee covenants and agrees that Employee will not use for Employee's personal benefit or for the benefit of any third party, nor will Employee disclose any Confidential Information unless authorized to do so by the Company in writing, except that Employee may disclose and use such Confidential Information when necessary in the performance of Employee's duties hereunder, or as required to be disclosed by order of a proper legal authority.

B.      Upon termination of Employee's employment with the Company for any reason, Employee covenants and agrees that Employee will promptly deliver to the Company all Confidential Information in his possession, whether developed by Employee or others, and all copies of such materials, whether of a technical, business or fiscal nature and whether on hard copy, tape, disk or any other format, which are in Employee's possession, custody or control.

IX.    **Notice Period**

A.      In consideration for this offer of employment and the Employer making the financial commitment contemplated hereunder, Employer and Employee hereby covenant and agree that neither shall retire, resign or otherwise terminate Employee's employment with the Employer for any reason without giving the other party two (2) days' prior written notice of the effective date of Employees' retirement, resignation or other termination. Such written notice shall be delivered, in the case of Employer, by hand to Mathew Van Alstyne or Evan

Schwartzberg or such other person appointed by the Employer, and to the Employee by personal delivery to Employee.

B.     The Employer retains the right to waive the notice requirement in whole or in part, and to terminate Employee's employment-at-will with or without prior notice.  During the notice period, the Employer may, in its sole discretion, but is not obligated to, provide Employee with work.  The Employer may, for all or part of the notice period, in its sole discretion:  (i) require Employee to conduct the normal course of business at the Employer; (ii) require Employee to remain away from the Employer's premises; (iii) require Employee not to perform any duties on behalf of the Employer; or (iv) withdraw any powers vested in, or duties assigned to Employee.  For the duration of the notice period in which Employee is employed by the Employer, Employee may not become employed elsewhere (either as an employee, independent contractor or otherwise).

## X.     **Restrictive Covenants**

A.     For so long as the Employee is employed by the Employer and for 6 months following his termination of employment for any reason (such period being referred to hereinafter as the "Restricted Period"), the Employee shall not, either himself or through an agent, whether for his own account or for the account of any other individual, partnership, firm, corporation or other business organization (other than the Company or its affiliates), intentionally solicit, endeavor to entice away from the Company, or otherwise interfere with the relationship of the Company with, any individual who is employed by or otherwise engaged to perform services for the Company (other than those individuals who are personally recruited by the Employee).

B.     During the Restricted Period, the Employee shall not, directly or indirectly, for the purposes of inducing such entity to reduce or cease its investment with the Company, (i) solicit, contact, interfere with, or endeavor to entice away from the Company and/or any of its affiliates any of their current or potential investors or any such persons or entities that were investors of the Company and/or any of its affiliates within the twelve (12) month period immediately prior to the Employee's termination of employment.

C.     Notwithstanding anything to the contrary, at all times following the termination of Employee's employment by the Company, for any reason, Employee shall not be restricted in any manner, directly or indirectly, from doing any business (including, but not limited to trading, buying, selling, marketing, including regulatory and other activities related to sales and trading of RMBS or other bonds or securities) with any clients or customers, including but not limited to the customers of the Company, and including any business that is competitive with that of the Company.

## XI.     **Non-Disparagement**

Employee agrees that he will not, at any time after the date hereof, disparage Employer (including any of its shareholders or affiliates or its or their respective directors, officers,

employees, or agents) or the business of Employer.  Employer (including any of its shareholders or affiliates or its or their respective directors, officers, employees, or agents) agrees that it will not, at any time after the date hereof, disparage Employee or the manner in which Employee performed his duties under this Agreement.

## XII.   **Remedies**

Any breach or threatened breach of Articles VIII to XI of this Agreement will irreparably injure Employer, and money damages will not be an adequate remedy.  Therefore, Employer may obtain and enforce an injunction, to the extent allowed by applicable law, prohibiting Employee from violating or threatening to violate these provisions. This is not Employer's only remedy; it is in addition to any other remedy available and is without prejudice to Employer's right to seek additional remedies, where applicable.

## XIII.   **Work Authorization**

Employee must also be able to satisfy the requirements of the Immigration Reform and Control Act of 1986, which requires documents to prove Employee's identity and demonstrate that Employee is authorized to work in the U.S., and to complete an Employment Eligibility Verification form (Form I-9).  A further condition of this offer and employment with Employer hereunder is that Employee has not been convicted of a felony or certain misdemeanors which would disqualify Employee from employment with Employer under federal securities law and under New York Stock Exchange or Financial Industry Regulatory Authority rules.

A.    **Background Check** This offer is further contingent on a satisfactory background check, which may include fingerprinting (as required by FINRA rules) and, at the Employer's discretion, a credit check.   This offer is subject to withdrawal if the background check does not meet the Employer's requirements.

## XIV.   **Covenants of the Employee**

A.    In order to function in the position Employer has offered, Employee must be properly registered with the registrations that are required for Employee's job function with the appropriate SROs, with the State of New York, and with other states as may be required. If Employee does not already have these registrations, Employee must take and pass the examination(s) required to obtain all the required registrations within 180 days of the beginning of the Term.  All terms of this Agreement, including the offer of employment, are contingent upon the successful transferring of Employee's registration(s) and/or timely taking and passing of any required examination(s).  Should Employee require registration(s) to properly perform

Employee's job function, Employer will render reasonable assistance in acquiring such registration(s).

B.      There has not been nor is there pending, any complaint or regulatory, self-regulatory, administrative, civil inquiry, proceeding or other matter relating to Employee's proposed employment or other activity.   There is not pending against Employee any criminal inquiry. There has not been any criminal conviction against Employee that either is directly related to Employee's proposed employment, or would involve an unreasonable risk to property or the safety or welfare of specific individuals or the general public.   Employee is aware of no complaint or injury relating to any prior employment, other than as fully disclosed to the Company.

C.      Employee is free to accept and comply with the terms of this employment offer and there will be no restrictions on Employee's ability to perform the duties of the position being offered to Employee.

D.      Employee is not directly or indirectly involved in any legal or business disputes that would affect Employee's ability to fully perform such duties for the Company pursuant to this offer letter.

E.      If any action is brought against the Company involving any actual or alleged restrictive covenant or other agreement or arrangement which may prohibit or restrict or affect Employee's employment by the Company, or any other matter as to which Employee did provide representations and warranties pursuant to this Paragraph, Employee covenants and agrees to indemnify, defend and hold the Company harmless from any and all costs incurred in defending such litigation or action, including but not limited to court fees, attorneys' fees and disbursements, and from any and all liability, judgment or settlement against the Company arising out of or in connection with any actual or alleged breach of or interference with such restrictive covenant or   agreement which may prohibit or restrict or affect Employee's employment by the Company.  As long as Employee is meeting his obligations to indemnify and defend Employer, Employer shall not incur any expenses for which it seeks reimbursement from Employee hereunder.   Employer shall not settle any such claim(s) without Employee's agreement.

## XV.   **Miscellaneous**

A.      **Arbitration**   Employee and the Company both specifically and knowingly and voluntarily agree to a pre-dispute arbitration clause so that should any controversy or dispute arise in connection with employee's employment, the cessation of employment or the interpretation of this offer letter, Employee and the Company agree to arbitrate any and all such claims before a neutral panel of the Financial Industry Regulatory Authority (pursuant to its rules, including those related to discovery) at a site in or nearest New York, New York.  In the course of any arbitration pursuant to this offer letter, Employee and the Company agree:  (a) to request that a written award be issued by the panel, and (b) that each side is entitled to receive any and all relief they would be entitled to receive in a court proceeding.  Employee and the

Company knowingly and voluntarily agree to enter into this arbitration clause and to waive any rights that might otherwise exist to request a jury trial or other court proceeding, except as otherwise agreed in Section XII of this Agreement. The parties' agreement to arbitrate disputes includes, but is not limited to, any claims of unlawful discrimination and/or unlawful harassment under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans with Disabilities Act, or any other federal, state or local law relating to discrimination in employment and any claims relating to wage and hour claims and any other statutory or common law claim.

B.     **Transfer And Assignment** This Agreement is personal as to the Employee and shall not be assigned or transferred by Employee. This Agreement may be assigned by the Employer to any entity which is a successor in interest or operator of the Employer's business provided such successor or operator expressly assumes Employer's obligations under this Agreement.

C.     **Severability** Nothing contained herein shall be construed to require the commission of any act contrary to law. Should there be any conflict between any provisions hereof and any present or future statute, law, ordinance, regulation or other pronouncement having the force of law, the latter shall prevail, but the provision of this Agreement affected thereby shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law, and the remaining provisions of this Agreement shall remain in full force and effect.

D.     **Governing Law** This Agreement is made under and shall be construed pursuant to the laws of the State of New York, without reference to its choice of law rules.

E.     **Counterparts** This Agreement may be executed in counterparts and all documents so executed shall constitute one agreement, binding on all the parties hereto.

F.     **Entire Agreement** This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes all prior oral and written agreements, arrangements, or understandings with respect thereto. No representation, promise, inducement, statement or intention has been made by any party hereto that is not embodied herein and no party shall be bound or be liable for any alleged representation, promise, inducement, or statement not so set forth herein.   Employee agrees and acknowledges that Employee has had the opportunity to seek and consult with independent counsel in connection with the conclusion of this Agreement.

G.     **Modification** This Agreement may be modified, amended, superseded or cancelled, and any of the terms, covenants, representations, warranties and conditions hereof may be waived, only by a written instrument executed by the party or parties to be bound by any such modification, amendment, cancellation, or waiver.

H.     **Waiver** Neither this Agreement nor any term or condition hereof or right hereunder may be waived or shall be deemed to have been waived or modified in whole or in part by any party or by the forbearance of any party to exercise any of its rights hereunder, except by written instrument executed by or on behalf of that party.   The waiver by either party of a breach by the other party of any of the provisions of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the other party.

I.      **Headings** The section and other headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning and interpretation of this Agreement.

J.      **Section 409A Compliance** This Agreement is intended to comply with the requirements of Section 409A of the Internal Revenue Code of 1986, as amended ("Section 409A"), and the parties hereby agree to amend this agreement as and when necessary or desirable to conform to or otherwise properly reflect any guidance issued under Section 409A after the date hereof without violating Section 409A. In case any one or more provisions of this Agreement fails to comply with the provisions of Section 409A, the remaining provisions of this Agreement shall remain in effect, and this Agreement shall be administered and applied as if the non-complying provisions were not part of this Agreement. The parties in that event shall endeavor to agree upon a reasonable substitute for the non-complying provisions, to the extent that a substituted provision would not cause this agreement to fail to comply with Section 409A, and, upon so agreeing, shall incorporate such substituted provisions into this Agreement. In the event that any payment or benefit made hereunder or under any compensation plan, program or arrangement of the Company would constitute payments or benefits pursuant to a non-qualified deferred compensation plan within the meaning of Section 409A and, at the time of Employee's "separation from service" Employee is a "specified employee" within the meaning of Section 409A, then any such payments or benefits shall be delayed until the six-month anniversary of the date of Employee's "separation from service".

K.      **Notices** Any notices required under this Agreement or during the Term shall be sent to Employee at the last address on record and to Employer at the address set forth below:

> Odeon Capital LLC
> 750 Lexington Ave, 26th Fl
> New York, New York 10022
> Attn: Mathew Van Alstyne

**Mathew Van Alstyne,**
**Managing Member**

_Mathew Vacoss_

May 2, 2011

Agreed to by:
**Bret Ackerman**

May 2, 2011