# Exhibit 22

# David Saponara

| | |
|---|---|
| **From:** | Stuart D. Roberts <SRoberts@bressler.com> |
| **Sent:** | Thursday, August 20, 2015 5:13 PM |
| **To:** | abigail pessen; David Saponara |
| **Cc:** | abigail@pessenadr.com; arthur.baumgartner@finra.org; Carole G. Miller; NEProcessingCenter@finra.org; Paul Aloe; Bruce Ackerman |
| **Subject:** | RE: Bret Ackerman v. Odeon Capital Group, LLC, et al. (FINRA Case No. 14-02042) |
| **Attachments:** | CWALT Trade tickets from 14-Feb Trade.pdf; 14-Feb Bret CWALT Trades.xlsx |

Chairperson Pessen-  After we received your email (and opposing counsel's letter) from earlier today regarding the alleged discrepancy involving the ▮▮▮▮▮▮▮▮▮▮▮▮ trade from February 14, 2014 (the sole discrepancy identified by Claimant and the sole apparent basis for his demand for trade tickets), our client spent more than two hours investigating why Claimant's account statements contain different information than what is shown on the trade blotter already in possession.  The results of this exercise demonstrates both: 1) the extraordinary burden created by Claimant's new demand for trade tickets and 2) the worthlessness of the trade tickets themselves.

Attached to this email is a .pdf containing all **22 trade tickets** associated with the ▮▮▮▮▮▮▮▮▮▮▮▮ trade at issue along with a spreadsheet summarizing this trading activity.  These trade tickets were generated during a period between February 14, 2014 and February 25, 2014.  As you can see, most (18 of 22) of these trade tickets were cancelled.  The short version of the relevant events is that Claimant bought ▮▮▮▮▮▮▮ of the CWALT from Bank of America on behalf of Odeon on February 14, 2014.  Claimant entered the ticket incorrectly a few times and also got the amount wrong a few times (these mistakes, which are not uncommon, account for the many of the 22 tickets). On the same date of the original trade, Claimant sold himself ▮▮▮▮▮▮▮ of the ▮▮▮▮▮ bonds and sold fellow Odeon employee Jeff Ward ▮▮▮▮▮▮▮ of the bonds (as reflected on the trade blotter).  Eventually, and for reasons perhaps only Claimant can explain, Claimant held ▮▮▮▮▮▮▮ of the bonds, the number cited by Claimant's counsel in his letter this morning.  The bigger point is that it took a careful review of all 22 trade tickets to piece together what happened with respect to this single trade.

Why is this trade (and the 22 trade tickets associated with it) relevant to Claimant's claims?  The short answer is that it is not.  The ▮▮▮▮▮▮ trade did not involve customers (all trading was firm-to-broker or broker-to-broker) and, therefore, did not give rise to commissions.  Although there is a discrepancy in the trade blotter regarding the total amount of the trade ($▮▮▮▮▮▮▮▮ vs. $▮▮▮▮▮▮▮▮), this discrepancy (which probably existed because of the 11-day period it took for the trade to shake out) did not impact Claimant's income one iota.  Even if this had been a customer trade (which it clearly was not), the total amount Claimant would have been underpaid for the ▮▮▮▮▮▮▮ discrepancy would only have been $1.39 (this can be explained at length if the Chair deems it necessary).

Again, it took our client ***more than two hours*** to sort through ***this single trade*** to determine which trade tickets were the final tickets.  The supplemental discovery order, as it currently stands, would require Respondents to go through this exercise 414 times (the total number of blotter trades in the selected months of May 2013 and January 2014).

As with this trade, many of the other trades on Odeon's blotter would have dozens, if not hundreds of trade tickets.  For example, one Odeon customer has 28 active accounts with Odeon.  If that customer purchases a particular bond, the purchase would be divided into 28 separate transactions, each one generating a trade

1

ticket.  If those trade tickets contain an error, they would have to be cancelled and 28 new tickets created.  One more error would result in the creation of 116 tickets.  For one trade.

Furthermore, the method described by Claimant's counsel for pulling trade tickets from Bloomberg for a particular month does not solve provide the magical shortcut counsel implies it does.  Odeon tried this and that process for the two months in question shows only 166 trades (many of which likely have multiple trade tickets), not the 414 contained on the blotter for those months.  This is a byproduct of Bloomberg's own classification system, which can change from customer to customer.   As a result, Claimant's purported solution to Odeon's dilemma is no solution at all.

All of this leads to Odeon's original point – that ***its trade blotter is easily the best resource for gathering information about its trading activities.***  Odeon is required to maintain this trade blotter under the Securities and Exchange Act and takes its responsibility very seriously.  Aside from the single discrepancy addressed above (which had no impact on his compensation), Claimant has provided no reason to doubt the comprehensiveness and accuracy of Odeon's trade blotter.  Claimant likely knows this, but nevertheless is demanding that Odeon go through the arduous and ultimately futile process of digging up trade tickets that (assuming the correct ones are located) contain only a fraction of the information provided under the blotter.

Finally, Odeon wants to be very clear --  ***it has nothing to hide***.  If Claimant is willing to compensate Odeon for using time on Bloomberg and for the time of an attorney to observe the process on behalf of Respondents, Odeon is willing to provide Claimant's counsel with an office and computer to allow them to track down the trade tickets they so desperately seek.  Respondents doubt Claimant will take Odeon up on this offer as it is likely as clear to them as to Odeon that the trade tickets are red herrings.

Respondents certainly do not want to waste your valuable time with meaningless arguments.  However, we hope that this communication assuages any concerns you raised earlier today regarding Odeon's trade blotter.  Thank you again for your consideration of these issues.

---

**From:** abigail pessen [mailto:abigailpessen@gmail.com]
**Sent:** Thursday, August 20, 2015 9:28 AM
**To:** David Saponara
**Cc:** Stuart D. Roberts; abigail@pessenadr.com; arthur.baumgartner@finra.org; Carole G. Miller; NEProcessingCenter@finra.org; Paul Aloe; Bruce Ackerman
**Subject:** Re: Bret Ackerman v. Odeon Capital Group, LLC, et al. (FINRA Case No. 14-02042)

Dear Counsel,
The parties disagree as to the burdensomeness of producing two sample months of trade tickets.

Claimant has now reduced his request to several hundred trade tickets to serve as a sample.

 In light of the fact that no explanation has been provided for the alleged discrepancy between the trade ticket and spreadsheet regarding a trade in February, 2014, a basis has been shown for requesting the reduced number of tickets for the two sample months.  The expense of producing them may be shifted to Claimant at the hearing if the expense is found to have been necessarily incurred by Respondents and the requested ticket are found to be essentially duplicative of the spreadsheets that have already been produced.

On another note, my August 17 Order neglected to include a deadline for (i) Claimant's identification of his expert and the expert's CV, and (ii) production of a report or a summary of the expert's opinions.  Unless

otherwise agreed by counsel, the deadline for (i) will be August 31, and the deadline for (ii) will be the date of the 20-day exchange.

Regards,
AP

Abigail Pessen
pessenADR.com
212 961 0668


On Thu, Aug 20, 2015 at 7:57 AM, David Saponara <dsaponara@kudmanlaw.com> wrote:
Chairperson Pessen:

Please find attached Claimant's response to Respondents' letter.

Thank you,

David N. Saponara
Kudman Trachten Aloe LLP
Empire State Building
350 Fifth Avenue, Suite 4400
New York, New York 10118
T: 212.868.1010 | F: 212.868.0013
dsaponara@kudmanlaw.com


**From:** Stuart D. Roberts
**Sent:** Wednesday, August 19, 2015 6:10 PM
**To:** abigail@pessenadr.com
**Cc:** David Saponara;arthur.baumgartner@finra.org;Carole G. Miller;NEProcessingCenter@finra.org;Paul Aloe
**Subject:** FW: Bret Ackerman v. Odeon Capital Group, LLC, et al. (FINRA Case No. 14-02042)


Chairperson Pessen:   Please find attached my letter of this date regarding your supplemental discovery order issued on August 17.  Thank you for your consideration of the issues raised therein.

**STUART D. ROBERTS**
BRESSLERAMERYROSS
2001 Park Place, Suite 1500
Birmingham, Alabama 35203
T: 205.820.8230
F: 205.719.0500
**NEW YORK | NEW JERSEY | FLORIDA | ALABAMA**
www.bressler.com

3

This electronic message and any attachments are for the sole use of the intended recipient(s). They may contain confidential and/or privileged information or other information subject to legal restrictions regarding disclosure and/or dissemination. If you are not an intended recipient of this message, any review, retransmission, copying, use, disclosure, or dissemination of this message or its attachments is prohibited. If you received this message in error please notify the sender by replying to this message and deleting or destroying all copies of this message and any attachments.

This electronic message and any attachments are for the sole use of the intended recipient(s). They may contain confidential and/or privileged information or other information subject to legal restrictions regarding disclosure and/or dissemination. If you are not an intended recipient of this message, any review, retransmission, copying, use, disclosure, or dissemination of this message or its attachments is prohibited. If you received this message in error please notify the sender by replying to this message and deleting or destroying all copies of this message and any attachments.