UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ODEON CAPITAL GROUP, LLC, MATHEW VAN
ALSTYNE, and EVAN SCHWARTZBERG,            Case No. 16-CV-00274 (JSR)

                    Petitioners,

              -against-

BRET ACKERMAN,

                    Respondent.

---

## MEMORANDUM OF LAW IN IN OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD AND IN SUPPORT OF CROSS-MOTION TO CONFIRM AWARD

---

Paul H. Aloe
David N. Saponara
KUDMAN TRACHTEN ALOE LLP
Empire State Building
350 Fifth Avenue, 68th Floor
New York, New York 10118
Tel: (212) 868-1010

*Attorneys for Respondent Bret Ackerman*

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ....................................................................................................................... 1

   I.  Petitioners Are Not Entitled to Vacatur of the Award ............................................. 1

      A. Alleged Arbitrator Misconduct ......................................................................... 4

         i.   Petitioners' untimely motion ....................................................................... 5

         ii.  Requests to postpone the hearing ................................................................ 8

         iii.  Cross-examination of Ackerman's expert witness ...................................... 11

         iv.  Admission of evidence during the hearing .................................................. 14

      B. Manifest Disregard of the Law ......................................................................... 15

         i.   Petitioners' manifest disregard argument questions the Panel's factual and evidentiary determinations, which are not subject to judicial review ................. 16

         ii.  The Award of 9% interest from November 1, 2012, was proper ................................ 20

         iii.  The Panel's award of attorneys' fees was not in manifest disregard of the law ........ 22

   II.  The Court Must Grant Ackerman's Cross-Motion to Confirm the Award ......................... 24

      A. Petitioners Have Failed to Demonstrate Grounds for Vacatur of the Award .................. 24

      B. Ackerman Is Entitled to the Fees and Costs He Incurred Confirming the Award ........... 25

CONCLUSION ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Areca, Inc. v. Oppenheimer & Co.,* 960 F. Supp. 52 (S.D.N.Y.1997) ........................................ 14

*Banc of Am. Sec. v. Knight*, 4 Misc. 3d 756, 781 N.Y.S.2d 829 (Sup. Ct. N.Y. Cnty. 2004) ......... 4

*Burka v. New York City Transit Auth.*,
No. 85-CIV-5751 (RPP), 1992 WL 251445 (S.D.N.Y. Sept. 18, 1992) ..................................... 15

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2d Cir. 2003) ............. 16

*Duferco, S.A. v. Tube City IMS, LLC*,
No. 10-CIV-7377 (JSR), 2011 WL 666365 (S.D.N.Y. Feb. 4, 2011),
*aff'd*, 464 F. App'x 28 (2d Cir. 2012) ....................................................................................... 4

*Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280 (S.D.N.Y. 2007) ................................. 2, 3, 14

*Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108 (2d Cir. 1993) ..................................... 15

*GFI Sec. LLC v. Labandeira*,
No. 01-CIV-00793 (JFK), 2002 WL 460059 (S.D.N.Y. Mar. 26, 2002) ..................... 2, 16, 18, 19

*Glob. Int'l Reinsurance Co., Ltd. v. TIG Ins. Co.*,
No. 08-CIV-7338 (JSR), 2009 WL 161086 (S.D.N.Y. Jan. 21, 2009) ..................................... 5, 24

*Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou
Grp., LLC*, 491 F. App'x 201 (2d Cir. 2012) ........................................................................... 15

*Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou
Grp., LLC*, 758 F. Supp. 2d 222 (S.D.N.Y. 2010) ...................................................................... 2

*Inyx, Inc. v. Bartke*,
No. 600828/2008, 2008 WL 4819600 (Sup. Ct. N.Y. Cnty. Oct. 21, 2008) ......................... 12, 13

*Koch Oil, S.A. v. Transocean Gulf Oil Co.*,
751 F.2d 551 (2d Cir. 1985) ...................................................................................................... 17

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*,
729 F.3d 99 (2d Cir. 2013) ......................................................................................................... 24

*Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739 (2d Cir. 1978) .......................................... 17

*Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*,
867 F.2d 130 (2d Cir. 1989) ....................................................................................................... 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir. 1986) ................ 15

*Rose Assocs. v. Lenox Hill Hosp.*, 262 A.D.2d 68, 695 N.Y.S.2d 1 (1st Dep't 1999)................. 21

*Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401 (S.D.N.Y. 2008)......................................... 25

*Tube & Steel Corp. of Am. v. Chicago Carbon Steel Products*,
319 F. Supp. 1302 (S.D.N.Y. 1970)................................................................................... 9, 10

*Wallace v. Buttar*, 378 F.3d 182 (2d Cir. 2004)........................................................... 1, 3, 16, 22

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200 (2d Cir. 2002) .............................. 15, 16

*Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 813 N.Y.S.2d 691 (2006) .............. 4

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
103 F.3d 9 (2d Cir. 1997)........................................................................................................ 24

*Woodco Mfg. Corp. v. G. R. & R. Mfg. Inc.*,
51 A.D.2d 631, 378 N.Y.S.2d 504 (3d Dep't 1976) ............................................................... 10

**Statutes**

9 U.S.C. § 10 ................................................................................................................................. 4

9 U.S.C. § 9 ................................................................................................................................. 24

CPLR 5001 .................................................................................................................................. 21

N.Y. Lab. Law § 198 ............................................................................................................. 20, 25

N.Y. Lab. Law § 215 ................................................................................................................... 20

**Rules**

FINRA Rule 13503 ....................................................................................................................... 6

FINRA Rule 13504 ....................................................................................................................... 6

FINRA Rule 13601 ....................................................................................................................... 8

FINRA Rule 13604 ..................................................................................................................... 15

## PRELIMINARY STATEMENT

Respondent Bret Ackerman ("Ackerman"), by his attorneys, Kudman Trachten Aloe LLP, respectfully submits this memorandum of law in opposition to the application of petitioners Odeon Capital Group, LLC ("Odeon"), Mathew Van Alstyne ("Van Alstyne"), and Evan Schwartzberg ("Schwartzberg") seeking to vacate an arbitration award dated November 20, 2015 (the "Award"), rendered against them under the rules of the Financial Industry Regulatory Authority ("FINRA"), in FINRA Dispute Resolution Arbitration No. 14-02042, and in support of Ackerman's cross-motion to confirm the Award. FINRA rules required petitioners to pay the Award in full within thirty days—here, by December 20, 2015. Rather than paying the $1,681,983.23 owed as of that date, petitioners commenced a special proceeding in the Supreme Court of the State of New York, County of New York, to vacate the Award. Ackerman removed the special proceeding to this Court on January 13, 2015, and now cross-moves to confirm the Award. As demonstrated herein, petitioners' alleged grounds to vacate the Award are baseless and the Award must be confirmed.[1]

## ARGUMENT

Petitioners seek to vacate the Award for arbitrator misconduct under 9 U.S.C. § 10(a)(3) and, alternatively, for manifest disregard of the law. As is explained in detail below, petitioners' challenge fails on both grounds and the Court must confirm the award under 9 U.S.C. § 9.

### I. Petitioners Are Not Entitled to Vacatur of the Award

"A motion to vacate filed in a federal court is not an occasion for de novo review of an arbitral award." *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004). "Arbitration awards are subject to very limited review to avoid undermining the twin goals of arbitration—settling

---

[1] A complete recitation of the relevant facts is set forth in the declaration of Paul H. Aloe, Esq., submitted with this memorandum of law. To avoid being needlessly repetitive, Ackerman will refer to the declaration where necessary in this memorandum.

disputes efficiently and avoiding long and expensive litigation." *GFI Sec. LLC v. Labandeira*, No. 01-CIV-00793 (JFK), 2002 WL 460059, at *2 (S.D.N.Y. Mar. 26, 2002). "[A]rbitrators do not have to give reasons for their decisions, and their decisions are essentially unappealable." *Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Grp., LLC*, 758 F. Supp. 2d 222, 224 (S.D.N.Y. 2010).

Petitioners' first proffered ground for vacatur is that the Panel engaged in misconduct under 9 U.S.C. § 10(a)(3). However, only the most egregious arbitrator misconduct supports vacatur under this provision. As explained by Judge Marrero:

> That provision applies to cases where an arbitrator, to the prejudice of one of the parties, rejects consideration of relevant evidence essential to the adjudication of a fundamental issue in dispute, and the party would otherwise be deprived of sufficient opportunity to present proof of a claim or defense. The misconduct in that event amounts to a denial of fundamental fairness in the proceeding, and renders the resulting arbitral decision biased, irrational or arbitrary.

*Fairchild Corp. v. Alcoa, Inc.*, 510 F. Supp. 2d 280, 287 (S.D.N.Y. 2007). Ackerman lays out in detail below the many ways in which petitioners' complaints about the Panel are not supported by the facts. In particular, the record demonstrates that petitioners' request for an adjournment of the hearing just days before it was scheduled to begin was untimely and procedurally defective under FINRA rules. Moreover, the Panel did not improperly deny petitioners an opportunity to defend against Ackerman's claim for unpaid wages. Petitioners had ample opportunity to challenge Ackerman's trades analysis and damages models before the hearing and through thorough cross-examination of both Ackerman and his expert accounting witness. The Panel correctly determined that petitioners were not prejudiced because the delays they allege to have experienced were caused by their own uncooperative conduct during pre-hearing discovery. "In short, only the most egregious errors or instances of extreme misconduct cited in the statute that would materially

prejudice the rights of a party warrant vacating an arbitral award." *Id.* at 286. There was no such misconduct in this case. Therefore, petitioners challenge to the Award on this ground fails.

Petitioners' second proffered ground for vacatur is that the Award was made in manifest disregard of the law. "A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law. On the contrary, the award 'should be enforced, despite a court's disagreement with it on the merits, if there is a *barely colorable justificatio*n for the outcome reached.'" *Wallace*, 378 F.3d at 190 (quoting *Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)) (emphasis added in original). "[C]ases demonstrate that [the Second Circuit has] used the manifest disregard of law doctrine to vacate arbitral awards only in the most egregious instances of misapplication of legal principles." *Id.*

Petitioners' challenge to the Award on this ground is nothing more than an improper attempt to question the Panel's evidentiary and factual findings. However, the Second Circuit has decisively stated that courts are not empowered to question an arbitration panel's assessment of the evidence presented:

> To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so *only* for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law. A federal court may not conduct a reassessment of the evidentiary record . . . upon the principle that an arbitral award may be vacated when it runs contrary to "strong" evidence favoring the party bringing the motion to vacate' the award.

*Id.* at 193 (emphasis in original). Here, petitioners complain that the evidence does not support the Panel's award of $1,102,193.00 in compensatory damages for unpaid wages. This is precisely the type of factual finding that courts may not disturb on a motion to vacate an arbitration award. Accordingly, petitioners' challenge to the Award on this ground also fails.

New York law (on which petitioners predicated their challenge to the Award in part) is even stricter. CPLR 7501 provides that, "[i]n determining any matter arising under this article, the court shall not consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute." *Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471, 479–80, 813 N.Y.S.2d 691, 696 (2006) ("Indeed, we have stated time and again that an arbitrator's award should not be vacated for errors of law and fact committed by the arbitrator and the courts should not assume the role of overseers to mold the award to conform to their sense of justice "). Moreover, whether manifest disregard of the law is even a cognizable ground for vacatur of an arbitration ward has been called into question in New York. *See Banc of Am. Sec. v. Knight*, 4 Misc. 3d 756, 758–65, 781 N.Y.S.2d 829, 831–36 (Sup. Ct. N.Y. Cnty. 2004). Whether assessed under the FAA or the CPLR, both of petitioners' grounds to challenge the Award fail. For this reason, the Court must confirm the Award.

### A.  Alleged Arbitrator Misconduct

Under 9 U.S.C. § 10(a)(3), a district court may vacate an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." As stated by this Court, petitioners "must show not only that the [Panel] wrongfully excluded relevant evidence, but also that the error was made 'in bad faith' or was 'so gross as to amount to affirmative misconduct.'" *Duferco, S.A. v. Tube City IMS, LLC*, No. 10-CIV-7377 (JSR), 2011 WL 666365, at *3 (S.D.N.Y. Feb. 4, 2011), *aff'd*, 464 F. App'x 28 (2d Cir. 2012) (quoting *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 40 (1987)). As this Court has observed: "It is well-established, however, that arbitrators have 'great latitude to determine the procedures governing their proceedings and to restrict or control evidentiary proceedings. Accordingly, arbitrators may proceed 'with only a

summary hearing and with restricted inquiry into factual issues.'" *Glob. Int'l Reinsurance Co., Ltd. v. TIG Ins. Co.*, No. 08-CIV-7338 (JSR), 2009 WL 161086, at *4 (S.D.N.Y. Jan. 21, 2009) (quoting *Supreme Oil Co., Inc. v. Abondolo*, Nos. 07-CIV-6479, 7537, 2008 WL 2925300, at *4 (S.D.N.Y. July 31, 2008) and *Areca, Inc. v. Oppenheimer & Co.,* 960 F. Supp. 52, 55 (S.D.N.Y.1997)).

Petitioners contend that the Panel engaged in misconduct by, among other things, ignoring their eleventh hour motion seeking additional discovery and/or to dismiss portions of Ackerman's claims, refusing to refer the untimely motion to be heard by the full Panel, admitting into evidence different demonstrative models of Ackerman's damages, and limiting Petitioners' counsel's cross-examination concerning Ackerman's trades analysis and demonstrative damages models. None of Petitioners' complaints amount to misconduct under 9 U.S.C. § 10(a)(3).

Petitioners' summary of their thoughts on the arbitration is telling and reveals the true nature of their challenge, which is that it is based solely on their disagreement with the Panel's evidentiary and factual findings: "At bottom, the Panel allowed Ackerman to present 'evidence' that should never have been allowed." Pet'rs' Mem. of Law at 24. Petitioners have failed to demonstrate that the arbitrators failed to consider any evidence or refused a proper request for an adjournment, let alone acted in such bad faith that the arbitrators could be said to have engaged in misconduct. The Court must deny petitioners' challenge of the Award on this ground.

### i.   Petitioners' untimely motion

Petitioners filed a motion on September 23, 2015—just fourteen days before the start of the hearing—seeking to compel Ackerman to provide additional information concerning his trades analysis and, in the alternative, to dismiss Ackerman's claims seeking wage-related damages. Aloe Decl. ¶ 34; Knoll Affirm., Ex. G. They also requested that full Panel hear the motion. Petitioners' motion was improper under several different FINRA Rules.

First, FINRA Rule 13503(a)(3) requires that "[w]ritten motions must be served at least 20 days before a scheduled hearing." Thus, petitioners' motion, which was served less than twenty days before the start of the hearing, was untimely under this rule. To the extent that petitioners' motion sought discovery-related relief, petitioners were not entitled to have the issues heard by the entire Panel. FINRA Rule 13503(d)(3) authorizes the chairperson alone to decide such motions and does not require that he or she refer discovery motions to the be heard by the full panel. Next, FINRA Rule 13504(a)—which specifically discourages motion to dismiss "prior to the conclusion of a party's case in chief"—requires that motions to dismiss be served at least sixty days before a scheduled hearing. It also requires that the opposing parties have forty-five days to respond. Petitioners filed their motion just fourteen days before the hearing was scheduled to start, in direct violation of these rules and was untimely by more than one month.

Notwithstanding these deficiencies, the Panel did, in fact, address petitioners' motion during the hearing. During Ackerman's counsel's examination of Mr. Ricci, petitioners objected to the introduction to the two demonstrative damages analyses that credited certain of petitioners' assumptions concerning Ackerman's client coverage. *See* Aloe Decl. ¶ 62, Ex. 31 at 795. The Chairperson responded to petitioners' objection as follows:

Here is the thing, and I know we have heard this complaint before from respondents, in fact asked to postpone the hearing because of it, the panel has discussed it and our view is that . . . we had our first call on this case in January. We could not get a hearing date until October. That was because of Respondent's schedule. But I mean you have had ten months for both sides to exchange documents and so on and just dragged and dragged and dragged and it was late August, end of August, before we were able to come up with a way to get the trade tickets. And then Respondent's say, "well we did not know the scope of what Mr. Ackerman was claiming." Well, it is in his pre-hearing brief that you got early September or mid September. . . . We think respondents did have the outline of what Mr. Ackerman was claiming, which was customer based. It was not just what is this, why is he claiming commission on this trade. It was based on coverage, and you knew that, since at least [crosstalk]. Let me finish. At least when you got the pre hearing brief, and the exhibits, which are customer based, and so you chose to craft your defense the way you have, which is fine, but we do not think you were deprived of the opportunity to confront his claims. You chose not to do it on a specific basis, trade by trade, which is fine . . . .

Aloe Decl. ¶ 62, Ex. 31 at 795.

Petitioners' complaint that the Panel did not address their motion is not even true. The full Panel did consider the motion. They determined that, to the extent petitioners experienced any delays in receiving Ackerman's trades analysis, those delay were directly attributable to their refusal to provide relevant documents during pre-hearing discovery. The Panel also determined that petitioners had everything they needed to know the extent of, and defend against, petitioners' wage claims. The Chairperson concluded her ruling on petitioners' motion as follows: "So, anyway, long-winded way of saying we think Respondents have all the data in your control. It was burdensome in your view to dig into it, but we do not see prejudice and so we are going to hear this." Aloe Decl. ¶ 62, Ex. 31 at 795.

Thus, despite have no obligation to hear petitioners' untimely and procedurally defective motion, the Panel did take it up at the hearing, and they chose to deny it. Petitioners' complaint that this decision amounts to misconduct is unavailing. Losing on a motion that should not even have been heard is not a ground for vacatur of an arbitration award under 9 U.S.C. § 10(a)(3).

7

### ii. **Requests to postpone the hearing**

Petitioners argue that the Panel engaged in misconduct by refusing to postpone the hearing. Petitioners made this request in the untimely motion that has already been addressed. As noted above, despite having no obligation to decide the motion, the Panel did address it during the hearing. The Panel denied the motion, and for good reason. The Panel was empowered to postpone the hearing only based on a showing of good cause.[2] The Panel determined that good cause to postpone the hearing did not exist because petitioners caused the delays about which they were complaining. Petitioners' abject refusal to comply with the Chairperson's orders during pre-hearing discovery delayed Ackerman's ability to complete his trades analysis. Despite petitioners' best efforts to prevent Ackerman from preparing his case, he fulfilled his obligation to produce the trades analysis by the twenty-day exchange. In any event, petitioners at all times had the relevant documents, information, and data in their possession. They knew the trades that were made and who they paid for each trade. To the extent that petitioners opted to wait and see Ackerman's trades analysis, that was tactical miscalculation on their part. As noted by the Chairperson: "[Y]ou chose to craft your defense the way you have, which is fine, but we do not think you were deprived of the opportunity to confront his claims." Aloe Decl., Ex. 31 at 795.

Petitioners also claim that "the Panel affirmatively denied even the briefest of adjournments (a short break in the arbitration proceedings)" on the final day of the hearing. Pet'rs' Mem. of Law at 26. However, the record is clear that petitioners did not request any such adjournment. At the beginning of Mr. Ricci's cross-examination, petitioners' counsel stated that he had "about 12 pages of notes to consolidate," intimating—but not specifically requesting—that

---

[2] FINRA Rule 13601(a)(2) provides as follows: "The panel may not grant a motion to postpone a hearing made within 10 days of the date that the hearing is scheduled to begin, unless the panel determines that good cause exists."

he would like to take the afternoon lunch break before proceeding with his cross-examination. Aloe Decl. ¶ 52, Ex. 31 at 807. The Chairperson responded by stating that "we are going to go for a while," instructing petitioners to begin their cross-examination. Aloe Decl. ¶ 52, Ex. 31 at 808. Petitioners did not formally request an adjournment in the proceedings, and the Panel did not deny them an opportunity to fully cross-examine Mr. Ricci. Petitioners' cross-examination of Mr. Ricci lasted approximately thirty minutes and concluded when counsel for petitioners stated "I do not have anything further." Aloe Decl. ¶ 53, Ex. 31 at 822. Petitioners' counsel still did not ask for an adjournment. At this point, the Panel broke for the lunch break. After returning from the break, the Panel offered the parties one last opportunity to put on evidence. *See* Aloe Decl. ¶ 53, Ex. 31 at 824. If petitioners had anything else that they wished to present, this was the time to speak up. They did not. The parties proceeded with closing arguments, and the hearing was concluded without any request from petitioners.

Having no facts to support their contention that the Panel denied proper requests to adjourn the hearing, petitioners reply on inapposite cases in an attempt to bolster their doomed argument. Petitioner cite *Tube & Steel Corp. of Am. v. Chicago Carbon Steel Products*, 319 F. Supp. 1302 (S.D.N.Y. 1970), for the proposition that "'refusing to postpone the hearing' upon sufficient cause show constitutes arbitrator misconduct and warrants vacatur of [an] award." Pet'rs' Mem. of Law at 27. However, in *Tube & Steel Corp. of Am.*, a case involving a respondent partnership that was handling the arbitration proceedings *pro se*, "[t]he arbitration was conducted in respondent's absence." *Tube & Steel Corp. of Am.*, 319 F. Supp. at 1302. The parties were advised that all three arbitrators were available for a hearing on August 17, 1970. The parties agreed to that date, and the respondent specifically advised that its representatives could not be available to appear in New York before that date. *Id.* at 1303. Notwithstanding the parties' agreement, the hearing was scheduled for August 10, 1970. *Id.* The respondent sent two letters reiterating that its

representatives were not available to come to New York for the hearing before August 17, 1970, but the arbitrators refused to change the date from August 10, 1970. *Id.*

"The hearing was held on August 10th in the absence of the respondent but a letter went to it giving it 10 days to write anything it might wish to call to the attention of the arbitrators else the arbitrators would proceed to decision. They made their Award on August 26." *Id.* The court "found that in ignoring the communications of the respondent and the agreeableness of the petitioner to the week of August 17 for the arbitration and insisting on proceeding for the sole convenience of themselves, the arbitrators were guilty of behavior which unfairly and unnecessarily prejudiced the rights of the respondent." *Id.* at 1304.

Petitioners also cite *Woodco Mfg. Corp. v. G. R. & R. Mfg. Inc.*, 51 A.D.2d 631, 378 N.Y.S.2d 504 (3d Dep't 1976) in an attempt to support its argument that the Panel engaged in misconduct warranting vacatur under 9 U.S.C. § 10(a)(3). Pet'rs' Mem. of Law at 27. Just like *Tube & Steel Corp. of Am.*, *Woodco Mfg. Corp.* involved a situation where the arbitration hearing was conducted in the absence of an unrepresented party. *See Woodco Mfg. Corp.*, 51 A.D.2d at 631–32 ("Appellant requested a further adjournment to procure local counsel, its original counsel having been discharged. This request was denied by the arbitrator and hearings were held . . . with neither appellant nor its counsel present."). Reviewing the trial court's decision to vacate the award, the Third Department determined that the arbitrator "was guilty of misconduct within the purview of CPLR 7511 . . . [and] that the rehearing be held before a new arbitrator." *Id.*

Thus, in both *Tube & Steel Corp. of Am.* and *Woodco Mfg. Corp.*, not only did the arbitrators refuse unrepresented parties' requests for adjournments, they also proceeded to conduct the arbitration hearings in their absence and render awards against them. The facts of those case do not resemble the facts of this case in any way. In this case, Petitioners made an untimely and procedurally defective request to adjourn the hearing and failed to demonstrate the good cause that

10

was required under FINRA Rule 13601. Based on these deficiencies alone, the Panel rightfully declined to adjourn the hearing. Their conduct in no way amounts to the misconduct that justifies vacatur of an award under 9 U.S.C. § 10(a)(3). Moreover, as explained above, petitioners did not, as they contend, request a brief adjournment during the final day of the hearing. Petitioners ended their examination of Mr. Ricci on their own volition. They did not ask the Panel for additional time to continue their examination when the proceedings broke for lunch, and they did not ask to present additional evidence at the start of the afternoon session. For these reasons, petitioners cannot vacate the Award on this ground.

### iii. Cross-examination of Ackerman's expert witness

Petitioners also complain that they were denied an opportunity to prepare for their cross-examination of Mr. Ricci and that the Panel cut them short. Much like petitioners' other complaints, this complaint is also provably untrue. As noted above, petitioners' counsel did not request for an adjournment in the proceedings, and the Panel did not deny petitioners an opportunity to complete their cross-examination. Throughout the hearing, the parties and the Panel were mindful of their six-day schedule. Mr. Ricci's testimony took place during the latter portion of the morning session on the final day of the hearing. Keeping to the agreed-to schedule, the Chairperson declined to end the morning session early and directed petitioners to proceed with their cross-examination. Perhaps to their surprise, petitioners completed their cross-examination of Mr. Ricci before the lunch break. If petitioners wished to continue their examination, then their counsel should have said so. Even if they were not sure at the time of the break, at the beginning of the afternoon session, the Panel asked both sides whether they had any other evidence to present. This was petitioners' opportunity to speak up, but they remained silent, choosing instead to wait until after the Award to fabricate this complaint.

Petitioners' complaint concerning the demonstrative damages analyses introduced during Mr. Ricci's examination are also misplaced. Petitioners received Ackerman's comprehensive trades analysis—the starting point for all all demonstrative damages—at the twenty-day exchange on September 21, 2015. It was introduced into evidence on October 7, 2015, during Ackerman's examination on the first day of the hearing. Petitioners spent a considerable portion of their cross-examination of Ackerman—several hours spanned over multiple hearing days—poring over the analysis and related documents and grilling Ackerman on client coverage, categories of assets, and details of trades. Far from being "new claims," as petitioners contend, the materials introduced during Mr. Ricci's testimony were derivative of Ackerman's initial trades analysis and merely credited certain assertions that petitioners made during the hearing.

Petitioners rely on *Inyx, Inc. v. Bartke*, No. 600828/2008, 2008 WL 4819600 (Sup. Ct. N.Y. Cnty. Oct. 21, 2008), in support of their argument that they were deprived of a fair hearing. *See* Pet'rs' Mem. of Law at 25–26. In *Inyx, Inc.*, Bartke brought an action against his former employer to recover damages related to his termination as well as attorneys' fees and expenses that he incurred during the course of the arbitration. *Id.* at *3. In a pre-hearing witness statement, Bartke indicated that he would provide an itemized statement of legal fees during the arbitration hearing. *Id.* Bartke failed to fulfill this promise, and he also did not testify in detail about when the fees were incurred (i.e., pre- or post-termination). *Id.* Bartke did, however, submit a schedule of legal fees with his post-hearing brief. *Id.* Since the parties submitted their post-hearing briefs simultaneously, Inyx received Bartke's schedule of attorneys' fees without notice and without an opportunity to respond. *Id.* The arbitrator rejected Inyx's letter objecting to the schedule of attorneys' fees on the ground that she had already advised the parties on the last day of the hearing that she would not accept any submissions after the post-hearing briefs. *Id.* at *4.

12

The arbitrator ruled in Bartke's favor, and she included an award of attorneys' fees that was consistent with the amount set forth in the schedule attached to Bartke's post-hearing brief. *Id.* After the arbitrator denied Inyx's challenge of the award based on technical and/or computational errors, Inyx challenged the award in the Supreme Court of the State of New York, County of New York, on the ground that the arbitrator engaged in misconduct by depriving Inyx of an opportunity to respond to the schedule of attorneys' fees. *Id.* at *5–7. The court agreed:

> This court determines that the arbitrator failed to comply with Section 10(a)(3) of the FAA in that she refused to hear evidence pertinent and material to the issue of attorney's fees after she permitted Bartke to submit post-hearing evidence, while denying Inyx the opportunity to be heard with regard to the calculation of attorney's fees or to cross-examine Bartke regarding the substance of the Schedule.

*Id.* at *7–8. In particular, the court found that AAA rules specifically provided "that all evidence shall be taken in the presence of all of the parties" and "that evidence may be submitted to the arbitrator after the hearing only if the parties agree or if the arbitrator directs and in any event, that all parties shall be afforded an opportunity to examine such documents and to lodge appropriate objections, if any." *Id.* at *8. Moreover, a separate AAA rule required the arbitrator to "specifically inquire of all parties whether they have any further proofs to offer or witnesses to be heard" before closing the hearing. *Id.* Inyx's letter to the arbitrator demonstrated a clear desire to respond to Bartke's schedule of attorneys' fees, but the arbitrator rejected Inyx's request. *Id.*

Petitioners describe *Inyx* as a case where "the court found that the attorney fees awarded by AAA arbitrator should be vacated because the respondent . . . did not have a fair opportunity to respond to this evidence." Pet'rs' Mem. of Law at 25. Petitioners conveniently omit that the evidence at issue was submitted without notice to Inyx and that the arbitrator expressly denied Inyx's request for an opportunity to respond. Based on these misrepresentations, petitioners contend that the *Inyx* decision is applicable in this case and that "Petitioners were clearly deprived of the opportunity to be heard on the issue of unpaid wages as asserted for the first time in an

ambush by Ackerman on the eve of hearing and during the hearing." Pet'rs' Mem. of Law at 26. Petitioners' contention is belied by the actual events of the hearing.

Ackerman did not wait until after the close of the hearing to submit pertinent evidence. He produced the trades analysis—the source for all demonstrative damages models—at the twenty-day exchange. Ackerman might have been able to produce this analysis earlier if had petitioner not spent the preceding months fighting desperately to keep from Ackerman the trade tickets he needed In any event, the Panel did not deprive Petitioners of an opportunity to respond to any evidence introduced at the hearing. At the end of Mr. Ricci's examination, petitioners' counsel expressly stated that he "did not have anything further." After returning from a break following the conclusion of Mr. Ricci's testimony, the Chairperson specifically asked whether "the parties [had] any further evidence or testimony to present." Aside from applications for attorneys' fees, both sides confirmed that they did not have any further evidence to present.

To summarize: "The scope of inquiry afforded petitioners was certainly sufficient to enable the arbitrators to make an informed decision and to provide petitioners a fundamentally fair hearing." *Areca, Inc. v. Oppenheimer & Co.,* 960 F. Supp. 52, 55 (S.D.N.Y.1997). The Court cannot vacate the Award on this ground.

### iv.   Admission of evidence during the hearing

Petitioners' weakest complaint is that the Panel heard evidence that petitioners believe they should not have. Arbitrators "are afforded broad discretion to determine whether to hear evidence." *Id.* at 55; *see also Fairchild Corp.*, 510 F. Supp. 2d at 286 ("Further manifesting the strict doctrinal rules formulated to advance the aims of the FAA, arbitrators are afforded broad discretion to determine whether to hear or not hear evidence, or whether additional evidence is necessary or would simply prolong the proceedings."). FINRA arbitrators, in particular, have wide discretion concerning the admission of evidence and are not bound by any formal rules. FINRA

Rule 13604 makes this clear: "The panel will decide what evidence to admit. The panel is not required to follow state or federal rules of evidence." Thus, whatever complaints petitioners might have concerning the evidence introduced at the hearing, their discretionary decisions cannot constitute misconduct under 9 U.S.C. § 10(a)(3).

### B.  Manifest Disregard of the Law

Although not specifically enumerated in 9 U.S.C. § 10(a), "an arbitral decision may be vacated when an arbitrator has exhibited a 'manifest disregard of law,'" but "the standard of review under this this judicially created doctrine is 'severely limited.'" *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002). "The manifest disregard standard is, by design, exceedingly difficult to satisfy." *Goldman Sachs Execution & Clearing, L.P. v. Official Unsecured Creditors' Comm. of Bayou Grp., LLC*, 491 F. App'x 201, 204 (2d Cir. 2012). "In order to advance the goals of arbitration, courts may vacate awards only for an overt disregard of the law and not merely for an erroneous interpretation." *Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993). "To constitute 'manifest disregard,' the arbitrators' error must have been readily obvious and the arbitrators, though recognizing the correct rule, must have nevertheless chosen to ignore that rule of law." *Matter of Arbitration No. AAA13-161-0511-85 Under Grain Arbitration Rules*, 867 F.2d 130, 133 (2d Cir. 1989). "The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986). "Neither the erroneous application of rules of law, nor the arbitrator's erroneous decision of the facts is ground for vacating the award." *Burka v. New York City Transit Auth.*, No. 85-CIV-5751 (RPP), 1992 WL 251445, at *6 (S.D.N.Y. Sept. 18, 1992). Moreover, "the court may not re-weigh the

evidence or question the credibility findings of the arbitrator." *GFI Sec. LLC*, 2002 WL 460059, at *4.

> **i. Petitioners' manifest disregard argument questions the Panel's factual and evidentiary determinations, which are not subject to judicial review**

Petitioners purport to challenge the Award based on what they contend is the Panel's manifest disregard of the law, but they then proceed to question specific factual and evidentiary determinations that they believe they can infer from the unexplained Award. To be sure, "[a] motion to vacate filed in a federal court is not an occasion for de novo review of an arbitral award." *Wallace*, 378 F.3d at 189. The doctrine of manifest disregard, in particular, "is highly deferential to the arbitral award and obtaining judicial relief for arbitrators' manifest disregard of the law is rare." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003). The Second Circuit is reluctant to disrupt arbitration awards for manifest disregard of the law because it interferes with the parties' intentions and thwarts the purposes of arbitration:

> Our reluctance over the years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort-its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply. It should be remembered that arbitrators are hired by parties to reach a result that conforms to industry norms and to the arbitrator's notions of fairness. To interfere with this process would frustrate the intent of the parties, and thwart the usefulness of arbitration, making it "the commencement, not the end, of litigation."

*Id.* (quoting *Burchell v. Marsh*, 58 U.S. 344, 349 (1854)).

"A party seeking vacatur bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Id.* "The arbitrator's factual findings and contractual interpretation are not subject to judicial challenge, particularly on our limited review of whether the arbitrator manifestly disregarded the law." *Westerbeke Corp.*, 304 F.3d at 214.

Despite their contentions, petitioners are challenging the Panel's factual and evidentiary determinations and not their application of the law. In particular, they are challenging the amount of compensatory damages awarded to Ackerman, arguing that the $1,102,193.00 set forth the in award could not have been based on the evidence adduced during the hearing. *See* Pet'rs' Mem. of Law at 28 ("There is [sic] no evidence presented that would support a finding that Ackerman earned, but was not paid $1,102,193 in wages. . . . It is preposterous on its face to suggest that Ackerman was denied the equivalent of close to one year's pay, nor is there any record evidence to support that amount of unpaid wages."). However, the Second Circuit has confirmed that arbitrators may make awards in lump sum amounts:

> It is settled law in this circuit that arbitrators may render a lump sum award without disclosing their rationale for it, and that when they do, courts will not inquire into the basis of the award unless they believe that the arbitrators rendered it in "manifest disregard" of the law or unless the facts of the case fail to support it. Such limited review is necessary if arbitration is to serve as a quick, inexpensive and informal means of private dispute resolution.

*Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985). Moreover, arbitrators need not provide any rationale explaining how they arrived at the amount awarded. *See Kurt Orban Co. v. Angeles Metal Sys.*, 573 F.2d 739, 740 (2d Cir. 1978) ("Arbitrators are not required to disclose the basis upon which their awards are made, and they did not do so in this case. In the absence of any indication that the award was made in 'manifest disregard' of the law, courts will not look beyond the lump sum award in an attempt to analyze the reasoning processes of the arbitrators."). In this case, the parties did not request that the Panel provided an explained decision.[3] Thus, to the extent that petitioners dispute the amount of unpaid wages that the Panel

---

[3] Explained decisions are, by default, not required in FINRA arbitrations. Under FINRA Rules 13904(g)(1) and 13514(d), the parties must jointly request an explained decision at least twenty days before the start of the hearing. Here, the parties did not request an explained decision. The Chairperson confirmed this fact at the close of the hearing: "Listen I just want to make sure we are

determined Ackerman was owed, that is an issue involving factual findings that are not subject to judicial review and do not give rise to a challenge based on manifest disregard of the law.

Petitioners' challenge of the Award is in many ways similar to *GFI Sec. LLC v. Labandeira*, No. 01-CIV-00793 (JFK), 2002 WL 460059 (S.D.N.Y. Mar. 26, 2002). Labandeira sued GFI in New York state court for breach of his employment agreement after GFI fired him. *GFI Sec. LLC*, 2002 WL 460059, at *1. GFI moved to compel arbitration, and the action was submitted to arbitration with the National Association of Securities Dealers ("NASD").[4] *Id.* Labandeira's breach of contract claims were heard by a three-arbitrator panel over ten days, resulting an award in Labandeira's favor for more than $200,000.00. *Id.* at *2. GFI challenged the award on the ground that it "was rendered in manifest disregard of the law and of the evidence." *Id.* In particular, GFI argued "that the evidence overwhelmingly showed that Labandeira was terminated for cause and 'given Labandeira's lack of any evidence to the contrary, the Panel manifestly disregarded the law and evidence when they awarded contractual damages to Labandeira.'" *Id.* at 3.

The court noted that manifest disregard of the law is not one of the specifically enumerated grounds for vacatur under 9 U.S.C. § 10(a), that "[j]udicial inquiry is extremely limited under this standard," and "[m]anifest disregard means more than error or misunderstanding." *Id.* at *4. Moreover, "GFI bears the burden of proof as the party moving to vacate the Award and must make a highly convincing showing." *Id.* GFI claimed that it fired Labandeira because two errors that he made early on during his employment with GFI "were injuring GFI's reputation and constitute a

---

all clear. We did not get any request for any kind of a reasoned award. So you are going to get a bare award." Aloe Affirm, Ex. 31 at 854.

[4] The NASD is a FINRA predecessor. Effective July 30, 2007, FINRA was created through the consolidation of NASD and the member regulation, enforcement and arbitration operations of the New York Stock Exchange.

cause basis" to terminate Labandeira. *Id.* During the hearing, both sides presented testimony contradicting the other's view as to the severity of Labandeira's errors. *Id.* Labandeira claimed that GFI terminated his employment because GFI was experiencing financial problems. *Id.* The arbitration panel awarded Labandeira $200,000.00.

Judge Keenan made short work of GFI's argument that the award should be vacated for being in manifest disregard of the law and facts: "Given that the Panel weighed the pleadings, testimony and evidence in reaching its award, it can and should be assumed that it considered the evidence in light of the relevant contract law." *Id.* at *5. He noted that GFI's challenge was really aimed at second-guessing the arbitrators' factual findings and not their application of the law:

> GFI's approach is more factual than law based. The bulk of GFI's claim goes to disregard of the evidence. This was a fact intensive breach of contract case. Both parties presented witnesses to the Panel to support their version of the events. Similarly, both parties recapped the evidence in detail on this petition. The Court will not re-weigh the evidence presented to the Panel or question its credibility findings. GFI's burden is high and the Court is constrained in its review of the Award. The Court has reviewed the arguments of the parties and finds that GFI has failed to carry its burden of demonstrating that the Panel knew of a governing legal principle yet refused to apply it or ignored it altogether. GFI's arguments amount to disagreements with the Panel's view of the evidence. The Panel as trier of fact was entitled to make factual findings and credibility determinations and this Court is not empowered to disregard those findings.

*Id.* at *5–6. Noting that "the court may not re-weigh the evidence or question the credibility findings of the arbitrator," Jude Keenan denied GFI's challenge of the arbitration award based on manifest disregard of the law and facts. *Id.* at *4.

Here, petitioners are going the way of GFI and are attempting to use manifest disregard of the law as a pretext to challenge the Panel's evidentiary and factual findings. The Court need not labor long to determine that petitioners cannot meet the exceedingly high burden that they face to demonstrate that the Panel was fully aware of the existence of a clearly defined governing legal principle and refused to apply it. Petitioners' challenge, therefore, fails on this ground.

It should be noted that Ackerman has his own disagreements with the Panels conclusions. He believes that the evidence clearly demonstrated that he was fired for unlawful reasons, including his request for accommodations and his complaints about pay. Indeed, one of the stated reasons for Ackerman's termination was that he refused to consider petitioners "settlement" offer in response to his wage complaints, which is clearly unlawful in New York.[5] Ackerman submits that, in a court of law, he would be entitled to a directed verdict on this claim. He also submits that he would be entitled to a directed verdict on unpaid wages of $1,505,055.79, the minimum amount shown to be owed at the hearing, and a doubling of that amount, as provided in New York Labor Law section 198(1-a).[6] Ackerman recognizes, however, that his claims were not heard in a court of law, but in a FINRA arbitration proceeding, and that he is bound by the arbitrators' rulings, even if wrong, and even if the result would be different in a court of law. Petitioners are equally bound by the portions of the Award with which they disagree.[7]

### ii.  The Award of 9% interest from November 1, 2012, was proper

Petitioners claim that the Panel's award of 9% interest from November 1, 2012, is "in error and/or a clerical mistake," Pet'rs' Mem. of Law at 19, though they do not address this issue at

---

[5] New York Labor Law section 215 bars employers from discharging, threatening, penalizing, discriminating, or retaliating against an employee for complaining "that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates" the NYLL.

[6] "[U]nless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law," New York Labor Law section 198(1-a) requires an award of liquidated damages of "no more than one hundred percent of the total amount of wages found to be due."

[7] This Court has had occasion to comment on the pros and cons of the FINRA arbitration process. *See Goldman Sachs Execution & Clearing, L.P.*, 758 F. Supp. 2d at 224 ("Although arbitration is touted as a quick and cheap alternative to litigation, experience suggests that it can be slow and expensive. But it does have these "advantages": unlike courts, arbitrators do not have to give reasons for their decisions, and their decisions are essentially unappealable. Here, petitioner Goldman Sachs Execution & Clearing, L.P. ("Goldman Sachs"), having voluntarily chosen to avail itself of this wondrous alternative to the rule of reason, must suffer the consequences."). Whether they like it or not, the parties must live with the consequences of the forum in which they found themselves. Ackerman understands this reality. Petitioners do not.

length in the argument section of their memorandum of law. It is indisputable that Ackerman is entitled to interest on the Award under New York Labor Law section 198(1-a)[8] and CPLR 5001(a).[9] Petitioners, therefore, take issue only with the date from which interest should accrue.

CPLR 5001(b) explicitly provides for calculation of prejudgment interest on damages "incurred at various times . . . from a single reasonable intermediate date." The Panel chose to effectuate this provision using November 1, 2012—roughly the midpoint Ackerman's employment with Odeon (May 1, 2011, through March 10, 2014)—as the starting point from which prejudgment interest would run. The midpoint of Ackerman's employment is a reasonable intermediate date under CPLR 5001(b). *See Rose Assocs. v. Lenox Hill Hosp.*, 262 A.D.2d 68, 69, 695 N.Y.S.2d 1, 2 (1st Dep't 1999) (finding midway point of holdover period "constitutes a "single reasonable intermediate date" from which to calculate interest under CPLR 5001(b)").

Petitioners only mention the interest component Award in passing, revealing that they do not truly believe that the Panel manifestly disregard the law by choosing November 1, 2012, as the starting point for prejudgment interest. Petitioners fail to argue that the Panel's award of interest was legally incorrect, not to mention overtly violative of a clearly defined governing legal principle. The Court must deny the motion to vacate the interest portion of the Award.

---

[8] New York Labor Law section 198 (1-a) provides as follows: "In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules."

[9] CPLR 5001(a) provides as follows:

> Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

### iii.  The Panel's award of attorneys' fees was not in manifest disregard of the law

Petitioners also claim that "the Panel manifestly disregarded the law when it awarded Ackerman's trial counsel 100% of the fees incurred." Pet'rs' Mem. of Law at 30. In support of this argument, Petitioners cite a number of cases that stand for the general proposition that, where failed claims are not so intertwined with successful claims so as to make dividing the hours expended on a claim-by-claim basis difficult, courts should decline to award fees incurred prosecuting the unsuccessful claims.[10] None of the cases address the ability of a federal court to vacate or modify an arbitration award that awarded all attorneys' fees requested even though the prevailing party did not succeed on all claims. However, since petitioners are challenging the award of attorneys' fees and costs based on manifest disregard of the law, there need only be a "barely colorable justification" to uphold the Panel's decision. *See Wallace*, 378 F.3d at 190.

Petitioners contend that Ackerman's unsuccessful claims "involve different legal theories and facts than his claim for unpaid wages under the New York Labor Law." Pet'rs' Mem. of Law at 31. Ackerman disagrees. Ackerman's brought claims against petitioners for, among other things, failure to pay wages owed, disability discrimination, and retaliation. All of these claims involved a common set of facts and legal issues and were related to Ackerman's wage claims.

The appropriate measures of damages for Ackerman's discrimination and retaliation claims depended on a calculation of what he actually earned (and was not paid). Thus, Ackerman's wage claims informed the discrimination and retaliation claims. Moreover, Ackerman's complaints about wages and his requests for reasonable accommodations overlapped during the last few months of his employment.[11] Van Alstyne, Schwartzberg, and Ackerman had several meetings

---

[10] The cases cited by petitioners all involved federal civil rights claims litigated in federal court.

[11] Ackerman contested his wages throughout his employment with Odeon. During the last few months before he was fired, Ackerman became increasingly vocal about his complaints. During

during the final weeks of Ackerman's employment to discuss these issues. Ackerman recorded these conversations, and he played several of the recordings at the hearing. These recorded conversation were integral to Ackerman's ability to prove his unpaid wages, as they contained admissions by Van Alstyne and Schwartzberg concerning client coverage and specific instances in which Ackerman was underpaid. These are prime examples of the ways in which Ackerman's counsel's work on the unpaid wage aspect of his case and was inextricably intertwined with his discrimination and retaliation claims.

In their opposition to Ackerman's application for attorneys' fees and costs, petitioners did not identify any categories of work for which Ackerman should not receive an award of fees. Instead, petitioners gave the application short shrift, stating that Ackerman's "request for an award of attorneys' fees fails . . . because he failed to prove any of his claims." Knoll Affirm, Ex. U. They cited some of the same cases that they now rely on in their memorandum of law and stated that any award of fees should be reduced to the extent that Ackerman does not prevail.

Ackerman's application included all of the time entries supporting the request. *See* Aloe Decl., Ex. 33. If petitioners wished to demonstrate that the work Ackerman's counsel performed was divisible on a claim-by-claim basis, then they should have included this analysis in their opposition. The Panel, too, had Ackerman's counsel's time entries and could have reduced the award of attorneys' fees to the extent that Ackerman's counsel's efforts were devoted to unsuccessful claims. The Panel chose not to reduce the award. This Court can reasonably infer from this fact that the Panel believed that Ackerman's claims were so inextricably intertwined that it was not appropriate to divide the award of attorneys' fees on a claim-by-claim basis. This is a

---

this same time, Ackerman was diagnosed with narcolepsy and began requesting reasonable accommodations for his condition, which requests were largely denied.

barely colorable justification for the award of attorneys' fees, and it requires that this Court deny petitioners' attempt to vacate the attorneys' fees portion of the Award.

## II. The Court Must Grant Ackerman's Cross-Motion to Confirm the Award

Under 9 U.S.C. § 9, "at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title." As this Court has recognized, the FAA "provides that a court 'must' confirm an arbitration award 'unless' it is vacated 'as prescribed' in Sections 10 and 11 of the FAA. *Glob. Int'l Reinsurance Co., Ltd.*, 2009 WL 161086, at *3.

### A. Petitioners Have Failed to Demonstrate Grounds for Vacatur of the Award

As set forth in detail above, petitioners' arguments in support of their motion to vacate the Award all fail. Their complaints concerning the Panel's evidentiary and factual findings constitute neither misconduct under 9 U.S.C. § 10(a)(3) nor manifest disregard of the law, as that doctrine has been developed by case law in the Second Circuit.

"[T]he burden of proof necessary to avoid confirmation of an arbitration award is very high." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 103–04 (2d Cir. 2013). "If there is 'even a barely colorable justification for the outcome reached,' the court must confirm the arbitration award." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir. 1997) (quoting *Matter of Andros Compania Maritima, S.A. (Marc Rich & Co., A.G.)*, 579 F.2d 691, 704 (2d Cir. 1978)). If a ground for the decision can be inferred from the facts of the case, then the district court must confirm the arbitrators' decision, "even if the ground for their decisions is based on an error of fact or an error of law." *Id.* All of petioners' arguments in support of vacatur of the Award having failed, the Court must confirm the Award under 9 U.S.C. § 9.

24

**B. Ackerman Is Entitled to the Fees and Costs He Incurred Confirming the Award**

The Award specifically stated that Ackerman's compensatory damages award of $1,102,193.00 was "based on unpaid wages owed" to him. Because he prevailed on his claim for unpaid wages, New York Labor Law section 198(1-a) provides that Ackerman is entitled to "all reasonable attorney's fees [and] prejudgment interest as required under the" CPLR. The Panel awarded Ackerman attorneys' fees of $247,532.00 and costs of $21,349.25 that he incurred during the course of the arbitration. However, Ackerman's entitlement to attorneys' fees under New York Labor Law section 198(1-a) did not end with the arbitration. He is also entitled to the attorneys' fees and costs that he incurred during the course of these proceedings to confirm the Award. *See Supreme Oil Co. v. Abondolo*, 568 F. Supp. 2d 401, 409 (S.D.N.Y. 2008) (awarding attorney's fees and costs in "action to confirm an arbitrator's award of" unpaid contributions to benefit fund because ERISA entitles prevailing party to reasonable attorneys' fees and costs "in an action to recover unpaid contributions"). Accordingly, Ackerman respectfully requests that this Court enter an order awarding Ackerman the attorneys' fees and costs he incurred in this proceeding.

<u>**CONCLUSION**</u>

For these reasons, Ackerman respectfully submits that this Court must deny petitioners' motion seeking vacatur of the Award and must grant his cross-motion to confirm the Award.

Dated: New York, New York
      February 1, 2016

By: _____
    Paul H. Aloe
    David N. Saponara
    KUDMAN TRACHTEN ALOE LLP
    Empire State Building
    350 Fifth Avenue, 68th Floor
    New York, New York 10118
    Tel: (212) 868-1010

    *Attorneys for Respondent Bret Ackerman*