UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ODEON CAPITAL GROUP, LLC, MATHEW VAN ALSTYNE, and EVAN SCHWARTZBERG,<br><br>Petitioners,<br><br>-against-<br><br>BRET ACKERMAN,<br><br>Respondent. | Case No. 16-cv-00274(JSR) |

## MEMORANDUM OF LAW IN SUPPORT OF PETITIONERS' MOTION TO REMAND

Mark D. Knoll (MK5343)
**BRESSLER, AMERY & ROSS, P.C.**
17 State Street
New York, New York 10004
(212) 425-9300
(212) 425-9337 (f)
mknoll@bressler.com

*Attorneys for Petitioners*

# TABLE OF CONTENTS

**Page**

**Table of Contents**..................................................................................................i

**Table of Authorities** ............................................................................................ii

**Preliminary Statement** .........................................................................................1

**Background** ..........................................................................................................1

**Argument**
Removal Was Improper Because Complete Diversity Did Not Exist
Between the Parties at the Time the Arbitration Proceeding Commenced......................3

    A.    Removals Based on Diversity Require Diversity at the
           Time the Action is Commenced and at Time of Removal...................... 3

    B.    Under New York Law, an Arbitration is Commenced
           at the Time a Notice or Demand to Arbitrate is Made............................4

    C.    Using the Date the Arbitration Was Initiated as the Date an Action
           is Commenced is Consistent with Related Determinations Concerning
           the Amount in Controversy Requirement............................................... 6

**Conclusion**.........................................................................................................10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Am. Guar. Co. v. Caldwell*, 72 F. 2d 209 (9th Cir. 1934)..................................................................8

*Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321 (1st Cir. 2000).................................................8-9

*Diffley v. Allied-Signal, Inc.*, 921 F.2d 421 (2d Cir. 1990)............................................................4

*Ford v. Hamilton Invs., Inc.*, 29 F.3d 255 (6th Cir. 1994)..............................................................8

*In re Cohoes Industrial Terminal, Inc.*, 78 B.R. 681 (Bankr. S.D.N.Y. 1987)..............................6

*Karsner v. Lothian*, 532 F.3d 876 (D.C. Cir. 2008).....................................................................7-9

*Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291 (2d Cir. 2000)............................................3

*Mohammed Bhatti v. Pettigrew*, 2012 U.S. Dist. LEXIS 47132 (S.D.N.Y. Apr. 2, 2012)..............3

*N. Am. Thought Combine, Inc. v. Kelly*, 249 F. Supp. 2d 283 (S.D.N.Y. 2003)............................9

*Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320 (11th Cir. 2005)...............8

*Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. N.Y. 2013)............................................4

*Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002)....................................................4

*United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298 (2d Cir. 1994).......................................................................3-4

*Wise v. Marriott Int'l, Inc.*, 2007 U.S. Dist. LEXIS 55611 (S.D.N.Y. July 30, 2007)....................9

## STATE CASES

*In re Arbitration between Knickerbocker Ins. Co. and Thelma Gilbert*, 28 N.Y.2d 57 (1971)...4-6

## FEDERAL STATUTES

28 U.S.C. § 1332..................................................................................................................1-2, 6, 10

28 U.S.C. § 1441............................................................................................................................3

28 U.S.C. § 1447............................................................................................................................3

## STATE STATUTES

New York CPLR §7501...................................................................................................................5

New York CPLR §7502...................................................................................................................6

New York CPLR §7503..................................................................................................4-5

## OTHER RULES

FINRA Rule 13300..........................................................................................................6

## PRELIMINARY STATEMENT

On December 18, 2015, Petitioners, Odeon Capital Group, LLC ("Odeon"), Mathew Van Alstyne ("Van Alstyne"), and Evan Schwartzberg ("Schwartzberg"), filed a Petition to Vacate an Arbitration Award in the Supreme Court of the State of New York (the "Petition to Vacate"). The Petition to Vacate related to an arbitration award (the "Award") issued by a Financial Industry Regulatory Authority ("FINRA") arbitration panel on November 20, 2015.

On January 13, 2016, Respondent, Bret Ackerman ("Ackerman"), filed a Notice of Removal removing the Petition to Vacate to this Court. The stated jurisdictional basis for Respondent's Notice of Removal is diversity of citizenship under 28 U.S.C. § 1332(a)(1).

In order for this Court to retain jurisdiction, diversity between the parties must exist both at the time the action was commenced and at the time of removal. Here, the "action" is the arbitration proceeding itself, inclusive of any post-arbitration proceedings to confirm or vacate the arbitration award. Under New York law, an arbitration proceeding is commenced or initiated when a notice of intent or demand to arbitrate is sent. Because the parties were all citizens of the State of New York at the time the underlying FINRA arbitration proceeding was commenced in July 2014, the Petition to Vacate was improperly removed and should be remanded.

## BACKGROUND

In an arbitration proceeding before FINRA filed on or about June 26, 2014, and amended on or about July 8, 2014, Ackerman, a former three-year employee of Odeon, a New York-based broker-dealer, asserted a host of claims against Odeon and its principals, Van Alstyne and Schwartzberg, challenging aspects of his employment and discharge (the "Arbitration"). *See* Declaration of Mark D. Knoll in Support of Motion to Remand ("Knoll Decl.") at Exhibit A. In his Statement of Claim, Ackerman claimed that Petitioners discriminated and retaliated against

1

him based on his alleged disabilities, that they denied him accommodations for his disabilities, that they retaliated against him for taking FMLA leave, that they denied him earned wages in violation of the New York Labor Law, and that they discharged him in retaliation for making a claim for unpaid wages, requesting FMLA leave, and/or requesting accommodations. *Id.* at pp. 2-3. In all, twelve of the thirteen claims raised by Ackerman in his Statement of Claim were based on New York state law. At the time he filed his arbitration claim with FINRA, Respondent was a resident and citizen of New York. *See* Knoll Decl. at Exhibit B.

The FINRA arbitration took place over the course of six hearing days between October 7, 2015 and October 15, 2015. In its Award dated November 19, 2015, the three-member arbitration panel found in favor of Petitioners with regard to all claims except Ackerman's claims for unpaid wages and for expungement of his FINRA Form U5. *See* Knoll Decl. at Exhibit C. With respect to the wage claim, the panel found that Petitioners were jointly and severally liable for unpaid wages owed to Ackerman in the amount of $1,102,193, interest on that award at 9% per annum from November 1, 2012 "until the award is paid in full," attorney's fees of $247,532, and costs of $21,349.25. *Id.*

Petitioners filed a Petition to Vacate the Award on December 18, 2015. *See* Knoll Decl. at Exhibit D. Ackerman filed his Notice of Removal on January 13, 2016, and an Amended Notice of Removal on January 14, 2016. *See*, Knoll Decl. at Exhibit E. The Notice of Removal alleges as its basis for this Court's jurisdiction diversity of citizenship under 28 U.S.C. § 1332(a)(1). *Id.* at ¶ 4. The Notice of Removal alleges that Ackerman "is a citizen and resident of Santa Monica, California," and that Petitioners are all citizens of the State of New York. *Id.* at ¶ 5.

2

## ARGUMENT

### REMOVAL WAS IMPROPER BECAUSE COMPLETE DIVERSITY DID NOT EXIST BETWEEN THE PARTIES AT THE TIME THE ARBITRATION PROCEEDING COMMENCED

The existence of federal jurisdiction is a prerequisite to removal. Where the alleged basis for jurisdiction is diversity, diversity must be established both at the time of removal and at the time the action was commenced. Federal courts sitting in diversity must look to state law to determine when an action is commenced. Under New York law, an arbitration is commenced when a demand or notice of arbitration is served. In this matter, the action was commenced when the Respondent filed his arbitration claim in July 2014. At the time, he was a resident and citizen of the State of New York. Therefore, since the Petitioners were also citizens of New York, there was no diversity between the parties at the time the action was commenced and the Petition to Vacate must be remanded to the New York Supreme Court.

### A. Removals Based on Diversity Require Diversity at the Time the Action is Commenced and at Time of Removal

Removal of actions from the state courts is permitted only where the district court has original jurisdiction. *See*, 28 U.S.C. § 1441(a). For matters removed pursuant to 28 U.S.C. § 1441, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Ackerman, as the removing party, bears the burden of demonstrating that the requirements for diversity jurisdiction are met. *See, Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000).

"When the basis of removal from state court is diversity between the parties, diversity must exist not only at the time the suit is commenced, but also at the time the removal petition is filed." *Mohammed Bhatti v. Pettigrew*, 2012 U.S. Dist. LEXIS 47132, at *7 (S.D.N.Y. Apr. 2, 2012) (citing *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark*

3

*Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)). Removal statutes are strictly construed and federal courts should resolve doubts in favor of remand. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 220 (2d Cir. N.Y. 2013) (citing *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32-33 (2002)).

Ackerman cannot rightly dispute that he was not a citizen of the State of New York at the time the arbitration proceeding was commenced. Therefore, since diversity jurisdiction was lacking at the time the matter was commenced, removal was improper and this matter should be remanded.

> **B.     Under New York Law, an Arbitration is Commenced at the Time a Notice or Demand to Arbitrate is Made**

In this matter, for purposes of New York law, the removed action was not "commenced" with the filing of the Petition to Vacate in New York Supreme Court on December 18, 2015. Rather, the "action" here is the arbitration proceeding that was duly commenced in July 2014 in accordance with the requirements of the New York CPLR.

A federal court will look to state law to determine when an action is commenced. *See, e.g.*, *Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990). New York CPLR §7503(c) sets forth the requirements for service of a demand for arbitration or a notice of intention to arbitrate. Pursuant to §7503(c), a "notice or demand [to arbitrate] shall be served in the same manner as a summons or by registered or certified mail, return receipt requested."

In 1971, the New York Court of Appeals decided *In re Arbitration between Knickerbocker Ins. Co. and Thelma Gilbert*, and addressed the issue of whether service by mail of a notice of application to stay arbitration was effected by posting or receipt. 28 N.Y.2d 57, 59 (1971) (hereafter "*Knickerbocker*"). At the time, any application to stay arbitration was required

4

to be served within 10 days after the arbitration demand was received.[1] *Id.* at 61. The Court of Appeals noted that the 10-day limit "was adopted in 1937, when the arbitration itself was deemed a special proceeding, incepted by the notice to arbitrate, and the application for a stay was a motion made in a pending proceeding." *Id.* While the CPLR was amended to eliminate the provision that arbitration itself constituted a "special proceeding," arbitrations are nonetheless proceedings subject to the CPLR. *See* NY CPLR §7501, *et seq.*

The analysis of the Court of Appeals in *Knickerbocker* is particularly relevant to the question presented here regarding the commencement of the action:

> The draftsmen of CPLR, in eliminating the provision that arbitration was a special proceeding, did not intend to change the method of service of the notice to stay arbitration, a method entirely satisfactory within the framework of arbitration practice. **Special proceeding or not, the arbitration is initiated by a notice or demand for arbitration.** Thus the Advisory Committee's Fourth Preliminary Report provided that a notice to arbitrate, as the first step in the matter, must be served "in the same manner as a summons in an action", but that an application to stay arbitration "made by the party served shall be made by motion."...
>
> The committee evolved in its Fifth Report the final wording of the proposed statute covering the notice to stay arbitration, and this wording was enacted as the last three sentences of CPLR 7503 (subd. [c]). It explained the changes from the previous report as follows: "provision has been made for service of both the notice of intention to arbitrate and notice of application for a stay by registered or certified mail, return receipt requested, on the suggestion of a number of bar associations that this conforms with actual present practice. The latter portion of the subdivision has also been expanded for clarification **with no change in meaning.**"
>
> **The key words are "with no change in meaning." For that qualification to be true, the notice to stay arbitration must remain assimilated to a paper served in a pending action, namely, one which could be served by posting to an attorney, and did not require receipt within the time limit to be effective.**

*Knickerbocker, supra* at 62-63 (internal citations omitted) (emphasis added).

That the arbitration demand constitutes the commencement of an action is further

---

[1] Currently, Section 7503(c) provides twenty days to serve a notice of an application to stay an arbitration.

supported by the fact that, under the CPLR, the service of a notice of intent to arbitrate stops the running of the statute of limitations. *See* NY CPLR §7502(b); *In re Cohoes Industrial Terminal, Inc.*, 78 B.R. 681, 704 (Bankr. S.D.N.Y. 1987).

Here, following the reasoning of *Knickerbocker*, the service of Ackerman's arbitration claim by FINRA[2] in July 2014 instituted what the Court of Appeals clearly considers to be a **"pending action"** under the CPLR. *See* NY CPLR §7502(b) (emphasis added). At the time the arbitration was initiated, Mr. Ackerman was a resident of New York. *See* Knoll Decl. at Exhibit B. Indeed, had Odeon, Van Alstyne, or Schwartzberg refused to consent to arbitration at the time they were served with the Statement of Claim in July 2014, Ackerman would not have been able to bring any motion or petition to compel arbitration in the federal courts because the parties were not diverse. Therefore, as noted above, because the parties were not diverse at the time the action was initiated, removal was improper and this matter should be remanded to the New York Supreme Court.

**C.   Using the Date the Arbitration Was Initiated as the Date an Action is Commenced is Consistent with Related Determinations Concerning the Amount in Controversy Requirement**

The use of the date that the arbitration was initiated as the date an action is considered to have "commenced" promotes uniformity and consistency with another central element of diversity jurisdiction – the amount in controversy requirement. Under Section 1332(a), the "matter in controversy" must exceed $75,000. 28 U.S.C. § 1332(a). While here the amount in controversy is clearly met (the Award sought to be vacated exceeds $1 million), it is easy to

---

[2] FINRA members and their associated persons are required by FINRA rules to submit certain disputes to arbitration through FINRA Dispute Resolution Inc. FINRA Rule 13300 permits service of a filed Statement of Claim by FINRA on a member firm or its associated persons. Here, FINRA served a copy of the Statement of Claim on Odeon, Van Alstyne and Schwartzberg by letter dated July 17, 2014. *See* Knoll Decl. at Exhibit A.

6

envision scenarios where aggrieved claimants or respondents in FINRA arbitrations attempt to vacate or confirm awards where the amount in controversy is not so clear. For this reason, other federal courts have approached determinations of the amount in controversy by looking to the initial demand rather than the amount of the award.

For example, in *Karsner v. Lothian*, the Court of Appeals for the District of Columbia Circuit analyzed a threshold jurisdictional issue regarding the amount in controversy requirement in the context of a FINRA arbitration. 532 F.3d 876 (D.C. Cir. 2008). In *Karsner*, Joseph Karsner was an employee and associated person of Legacy Financial Services, Inc. ("Legacy"), a registered broker-dealer. *Id.* at 881. A client, Pamela Lothian, initiated a FINRA arbitration proceeding against Karsner and Legacy asserting that Karsner had induced her into making unsuitable investments resulting in losses of over $100,000. *Id.* The parties settled the matter and the FINRA arbitration panel entered a stipulated award dismissing the action and recommending expungement of the matter from Karsner's registration record. Karsner filed a petition to confirm the award in the district court.[3] As required under FINRA rules, the Maryland Securities Commission was given notice of the confirmation application and they sought to intervene in order to oppose the application to confirm. When the application to intervene was denied, the Commission appealed. *Id.*

At the outset, the D.C. Circuit analyzed the Commission's argument that the district court lacked subject matter jurisdiction. *Id.* at 882. Acknowledging that the parties were diverse, the D.C. Circuit found that the question related to the "amount in controversy requires us to consider a question of first impression in our Circuit." *Id.* The court identified three approaches used by

---

[3] Pursuant to FINRA rules, Karsner was required to have the arbitration award granting him expungement relief confirmed by a court of competent jurisdiction before FINRA would finalize the expungement from his registration record.

7

other circuits: "the award, the demand and the remand approaches." *Id.* The court wrote:

> Under the award approach, the amount in controversy is determined by the amount of the underlying arbitration award regardless of the amount sought. *See, e.g., Ford v. Hamilton Invs., Inc.*, 29 F.3d 255, 260 (6th Cir. 1994). Pursuant to the demand approach, the amount in controversy is the amount sought in the underlying arbitration rather than the amount awarded. *See, e.g., Am. Guar. Co. v. Caldwell*, 72 F. 2d 209, 211 (9th Cir. 1934); *see also Bull HN Info. Sys., Inc. v. Hutson*, 229 F.3d 321, 328-30 (1st Cir. 2000) (applying demand approach to bifurcated arbitration proceeding). The remand approach appears to apply if the petition includes a request to remand and reopen the arbitration proceeding, in which case the amount in controversy is the amount sought in the underlying arbitration. *See, e.g., Peebles v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 431 F.3d 1320, 1325-26 (11th Cir. 2005).

*Karsner*, 532 F.3d at 882. Analyzing these approaches, the D.C. Circuit found that "[o]f the three approaches, the award approach has the least appeal." *Id.* The use of the award approach, the court found "would apply two different jurisdictional tests depending on the action the petitioner seeks, resulting in jurisdiction over a petition to compel arbitration of a claim but not necessarily over a petition to confirm/vacate an arbitration award arising from the same claim." *Id.* at 883. For example, under the award approach, and assuming that diversity exists, a claimant seeking to compel an arbitration where $100,000 is sought would meet the amount in controversy requirement. Conversely, if the matter proceeded to award and the amount awarded was only $50,000, then, in an application to confirm or vacate the award, using the award approach, the amount in controversy requirement would not be met and the district court would not have subject matter jurisdiction. *Id.* at 881, fn. 5.

Opting to use the demand approach,[4] the D.C. Circuit agreed with the First Circuit in finding that the demand approach "recognizes the 'close connection between arbitration and subsequent enforcement proceedings' and 'carr[ies] out the federal policies in favor of

---

[4] Having determined the "demand approach" was appropriate, the court did not separately consider the "remand approach."

8

arbitration.'" *Id.* at 883 (quoting *Bull HN Info. Sys. v. Hutson*, 229 F.3d 321, 329 (1st Cir. 2000)).

The D.C. Circuit went on:

> The demand approach thus avoids the potential problem (under the award approach) that the court could compel arbitration but then lack jurisdiction to review the arbitration it ordered. Further, unlike the award approach, **the demand approach permits the district court to exercise jurisdiction coextensive with the "diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated."**

*Karsner*, 532 F.3d at 883-84 (quoting *Bull HN Info. Sys., supra*, 229 F.3d at 329)(emphasis added).

While the Second Circuit does not appear to have directly addressed the issue, two Southern District courts have followed the demand approach. *See Wise v. Marriott Int'l, Inc.*, 2007 U.S. Dist. LEXIS 55611, at *13 (S.D.N.Y. July 30, 2007); *N. Am. Thought Combine, Inc. v. Kelly*, 249 F. Supp. 2d 283, 285 (S.D.N.Y. 2003).

Assessing diversity at the time the arbitration demand is made and utilizing the demand approach to determine whether the amount in controversy requirement is met presents a jurisdictionally consistent approach to decisions involving removed actions from state courts related to arbitrations. For matters related to arbitrations in New York, the simple test promoted by the *Knickerbocker* and *Karsner* cases is this: would the district court have had jurisdiction to resolve controversies arising out of the dispute at all stages of the arbitration proceeding, from the demand for arbitration through the application to confirm or vacate any final award? If the answer is no at any stage of the proceeding, then the district court lacks subject matter jurisdiction and the matter must be remanded to state court.

Here, because the parties were not diverse when the arbitration was initiated, the district court would have lacked subject matter jurisdiction over the matter at the outset. The simple fact that Mr. Ackerman moved to California during the pendency of the matter does not change the

9

outcome and vest the court with jurisdiction. In fact, the use of the *Knickerbocker/Karsner* approach to determining whether the jurisdictional requirements of Section 1331 are met would prevent forum shopping and gamesmanship by litigants who change residencies during the pendency of a dispute.

## CONCLUSION

Because the parties were not diverse at the time the arbitration proceeding was commenced, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332. Therefore, for all the foregoing reasons, Ackerman's Notice of removal should be dismissed and this matter should be remanded to the Supreme Court of the State of New York.

Dated: February 12, 2016

BRESSLER, AMERY & ROSS, P.C.
Attorneys for Petitioners

By: _____
Mark D. Knoll (MK5343)
