```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ODEON CAPITAL GROUP, LLC,           :
MATHEW VAN ALSTYNE, and             :
EVAN SCHWARTZBERG,                  :
                                    :    16 Civ. 274
          Petitioners,              :
                                    :    OPINION AND ORDER
          -v-                       :
                                    :
BRET ACKERMAN,                      :
                                    :
          Respondent.               :
------------------------------------x
```

This motion to remand presents the question of whether diversity of citizenship, for the purpose of assessing federal subject matter jurisdiction over a motion to vacate an arbitration award, is measured as of the date a party filed the motion in court or as of the date the underlying arbitration was filed. The Court holds that diversity in such cases is assessed as of the date a party filed the motion in court, not the date the underlying arbitration was filed. Accordingly, the Court finds that diversity of citizenship exists between the parties to the instant case and denies the motion to remand.

By way of background, on June 26, 2014, Bret Ackerman, a former employee of Odeon Capital Group, LLC, a New York-based broker-dealer, filed an arbitration proceeding before the Financial Industry Regulatory Authority ("FINRA"). See Memorandum of Law in Support of Petitioners' Motion to Remand

1

("Pet. Br."), Dkt. 15, at 1; Memorandum of Law in Opposition to Petitioners' Motion to Remand ("Resp. Opp. Br."), Dkt. 17, at 2; Declaration of Mark D. Knoll in Support of Motion to Remand ("Knoll Declaration"), Dkt. 12, Exhibit A. At the time he filed the arbitration proceeding, Mr. Ackerman was a citizen and resident of New York. See Pet. Br. at 2; Resp. Opp. Br. at 3; Knoll Declaration, Exhibit B. In the arbitration, Mr. Ackerman brought several claims against the Petitioners here – Odeon Capital Group, LLC, Mathew Van Alstyne, and Evan Schwartzberg – relating to breach of Mr. Ackerman's employment contract, discrimination on the basis of disability, and retaliation. See Knoll Declaration, Exhibit A.[1] On November 19, 2015, a FINRA arbitration panel issued an award, finding in favor of Mr. Ackerman on two of his claims and holding petitioners liable for unpaid wages in the amount of $1,102,193, plus interest on that award and attorneys' fees and costs. See Knoll Declaration, Exhibit C.

On December 18, 2015, Petitioners filed a petition to vacate the arbitration award in the Supreme Court of the State of New York, New York County. See Knoll Declaration, Exhibit D. Petitioners argued that the arbitrators' ruling was the result

---

[1] Mr. Ackerman, in the arbitration proceedings, also brought claims against Bonwick Capital Partners LLC, but the arbitration panel denied these claims in their entirety, and Bonwick is not part of the instant petition to vacate the arbitration award. See Knoll Declaration, Exhibit A, at 2; Knoll Declaration, Exhibit C, at 2.

2

of arbitrator misconduct that deprived Petitioners of a fair hearing and that the award was in manifest disregard of the law. See id. at 5. Therefore, according to Petitioners, there were grounds for vacatur of the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 10 et seq. and New York Civil Practice Law and Rules (CPLR) § 7511. See id. at 16, 20.

On January 13, 2016, Mr. Ackerman, the Respondent, filed a notice of removal to federal court and filed an amended notice of removal the next day. See Notice of Removal, Dkt. 1; Amended Notice of Removal, Dkt. 4. Respondent alleged in his notice of removal that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Mr. Ackerman is now a citizen and resident of Santa Monica, California, and Petitioners are citizens of New York. See Amended Notice of Removal, Dkt. 4, ¶¶ 4-9.[2] On February 18, 2016, Petitioners filed a motion to remand to state court. See Notice of Motion to Remand, Dkt. 14. Petitioners argued that removal to federal court was improper because diversity of citizenship did not exist between the parties when the arbitration proceeding commenced, since at that time Mr. Ackerman was a citizen and resident of New York. See Pet. Br. at 3. Respondent opposed the motion to remand on the basis that the relevant date for assessing diversity of

---

[2] On February 1, 2016, Respondent also filed a cross-motion to confirm the arbitration award. See Notice of Cross-Motion to Confirm Arbitration Award, Dkt. 6.

3

citizenship is not when the underlying arbitration was filed, but when the petition to vacate the arbitration award was filed in state court, by which point Mr. Ackerman had moved to California. See Resp. Opp. Br. at 2-3. For the reasons stated below, the Court finds that Respondent has the more accurate view of the matter.[3]

The federal removal statute provides that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). Further, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between – (1) citizens of different States . . . " 28 U.S.C. § 1332(a)(1).[4] However, "[i]f at any time before final

---

[3] While the Court denies Petitioners' motion to remand, the Court does not view this motion as frivolous, as Respondent suggests. See Resp. Opp. Br. at 18. As Petitioners forthrightly acknowledge, their argument is novel. See Petitioners' Reply in Support of Motion to Remand ("Pet. Reply Br."), Dkt. 19, at 3. But the novelty of a claim need not be a strike against it, and the practice of raising claims that seek to extend existing law can be helpful in clarifying legal standards, as it is here.

[4] Petitioners, as stated supra, moved to vacate the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. § 10 et seq., in addition to CPLR § 7511. See Knoll Declaration, Exhibit D, at 20. But the petition does not give rise to federal question jurisdiction – and no party in the instant litigation claims that it does – because the Federal Arbitration Act "creates

4

judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"[W]hether federal diversity jurisdiction exists is determined by examining the citizenship of the parties at the time the action is commenced." Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998) (citation omitted). "[W]here [the] basis of removal is diversity then diversity of citizenship must exist at [the] time [the] action was filed in state court as well as at [the] time of removal." United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994) (citation omitted). As to the law that governs when an action is considered to have commenced, "[i]n diversity cases . . . state law determines the . . . questions of what events serve to commence an action and to toll the statute of limitations." Diffley v. Allied-Signal, Inc., 921 F.2d 421, 423 (2d Cir. 1990) (internal quotation marks omitted). Since the parties here do not dispute that New York state law governs this issue, see Pet. Br. at 4; Resp. Opp. Br. at 4, the Court looks to New York state law to determine when the action was commenced for the purpose of measuring diversity of citizenship.

---

a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983).

5

New York state law recognizes two forms of civil judicial proceedings: actions and special proceedings. See CPLR § 103(b) ("[a]ll civil judicial proceedings shall be prosecuted in the form of an action, except where prosecution in the form of a special proceeding is authorized."). Applications made via "special proceeding" may include applications to compel or stay arbitration, or to confirm or vacate an arbitration award. See CPLR § 7503, 7510, 7511. However, as Respondent notes, and Petitioners concede, arbitration itself is no longer a "special proceeding" in New York. See Resp. Opp. Br. at 5; Pet. Br. at 5; See Pet. Reply Br. at 1 n.5; Knickerbocker Ins. Co. v. Gilbert, 268 N.E.2d 758, 760 (N.Y. Ct. App. 1971).[5] The question, then, is whether arbitrations are "actions" under New York law.

CPLR § 7502(a), part of CPLR Article 75, states that "[a] special proceeding shall be used to bring before a court the first application arising out of an arbitrable controversy which is not made by motion in a pending action." Thus, while CPLR § 7502(a) does not expressly state that arbitration is not itself a "pending action," it clearly implies as much – for why would Article 75 authorize parties to bring special proceedings to vacate arbitration awards (see CPLR § 7502, 7511) if such

---

[5] Petitioners argue that the decision of the New York Court of Appeals in Knickerbocker supports their position that arbitration is an "action," see Pet. Br. at 5-6, but the Court does not read that case as addressing the issue in any material, let alone binding, respect.

applications could simply be made by motion in the underlying arbitration, which on Petitioners' theory would be a "pending action"?

The logical inference from the text of Article 75 is that special proceedings related to arbitration, and not arbitration itself, constitute judicial proceedings. As Professor Vincent Alexander writes in his commentary on the CPLR, "[u]nder the CPLR, an arbitration is not a special proceeding . . . Today, a special proceeding is simply the mechanism by which judicial intervention is sought in connection with the arbitration. Unless a related action is already pending, the first application to a court with respect to arbitration is to be prosecuted in the form of a special proceeding." Consolidated Laws of New York Annotated, C7502:1 (McKinney's 2014) (internal citations omitted). Also instructive is Knoll N. Am., Inc. v. IBF Grp., Inc., 601 N.Y.S.2d 224 (N.Y. Sup. Ct. 1993). In that case, the court held that the New York Business Corporation Law, which prohibits a foreign corporation doing business in New York from maintaining "any action or special proceeding" in New York until it obtains authority to do so, applies only to a "proceeding pending in a court (whether instituted by action or special proceeding)," and not to the "out of court institution of arbitration." Knoll, 601 N.Y.S.2d at 226. As the court there

7

noted, "[t]he adoption of the CPLR changed prior law so that arbitration is no longer considered a judicial proceeding until the making of an application with respect thereto, whether by institution of a special proceeding under Article 75 or by motion in a pending action." Id.

Additionally, other provisions of New York law support the distinction between civil judicial proceedings, on the one hand, and arbitration, on the other. See, e.g., New York Judiciary Law § 475, Attorney's Lien in Action, Special, or Other Proceeding ("From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department . . . or the service of an answer containing a counterclaim, or the initiation of any means of alternative dispute resolution including, but not limited to, mediation or arbitration . . .") (emphasis added)); Matter of Taylor, Jacoby & Campo, 617 N.Y.S.2d 168, 168 (1st Dep't 1994) (upholding the denial of attorneys' application to assert a lien on funds obtained by their client in an arbitration award, when those attorneys had not appeared in an Article 75 proceeding that the other party brought to confirm the award, because the lien statute provided for the lien to be asserted "only by 'the attorney who appears for a party' in the action or special proceeding").

These provisions of New York law may not absolutely compel the conclusion that arbitration is not an action for the purpose of assessing diversity of citizenship. See Dixie Yarns, Inc. v. Forman, 906 F. Supp. 929, 935 (S.D.N.Y. 1995) ("[w]here arbitration may be differentiated from court 'action' in one context, such a distinction may not be warranted in another.").[6] Nevertheless, the Court is persuaded by both the text of CPLR Article 75 and by other provisions of New York law that arbitration is distinct from either actions or special proceedings. Therefore, the civil judicial proceeding in the instant dispute should be deemed to have "commenced," for the purpose of assessing diversity of citizenship, when Petitioners filed their petition in state court to vacate the arbitration award.

It remains only to note that, while Petitioners adduce several additional arguments for why arbitration ought to count as an "action" for the purpose of assessing diversity jurisdiction, none of these arguments is persuasive. Petitioners contend, for example, that the notice of an intent to arbitrate

---

[6] In Dixie Yarns, the court found that an arbitration proceeding qualified as an "action for money damages" for the purpose of applying New York Debtor and Creditor Law § 273-a, which required a fraudulent conveyor to be "a defendant in an action for money damages." See Dixie Yarns, 906 F. Supp. at 935-37. The Court finds that the provisions in Dixie Yarns – and the interest in preventing defendants from fraudulently conveying their assets while claims against them are being arbitrated – differ greatly from the considerations relevant to a determination of diverse citizenship.

9

stops the running of the statute of limitations. See Pet. Br. at 5-6, citing CPLR § 7502(b) ("If, at the time that a demand for arbitration was made or a notice of intention to arbitrate was served, the claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state, a party may assert the limitation as a bar to the arbitration on an application to the court"); In re Cohoes Indus. Terminal, Inc., 78 B.R. 681, 704 (Bankr. S.D.N.Y. 1987) ("The statute of limitations on a claim submitted to arbitration stops running when . . . a notice of intention to arbitrate is served.") (citation omitted). In the Court's view, however, the text of CPLR § 7502(b) does not clearly stand for the proposition that service of a notice of intent to arbitrate stops the running of the statute of limitations, and even if this proposition is correct, it does not follow that arbitration is an "action" for the purpose of determining diversity of citizenship. In fact, CPLR § 7502(b) seems to reinforce the distinction between arbitration, on the one hand, and judicial proceedings "asserted in a court of the state," on the other.

Petitioners also argue that evaluating diversity of citizenship in accordance with the date the arbitration was initiated would align with certain federal courts' approach to the amount in controversy requirement – the other prong of

federal diversity jurisdiction. See 28 U.S.C. 1332(b); Pet. Br. at 7-8; Pet. Reply Br. at 3. Petitioners note that some courts, including the D.C. Circuit, have used the "demand approach" to measure the amount in controversy. See Pet. Br. at 8. According to the "demand" approach, the amount in controversy is determined by the amount sought in the underlying arbitration, not the amount awarded by the arbitrators. See Karsner v. Lothian, 532 F.3d 876, 884 (D.C. Cir. 2008) ("the demand approach permits the district court to exercise jurisdiction coextensive with the diversity jurisdiction that would have otherwise been present if the case had been litigated rather than arbitrated.") (internal quotation marks omitted).[7]

In the Court's view, Petitioners have not presented controlling authority for the proposition that the amount in controversy should be measured as of the initial demand for

---

[7] Petitioners cite two S.D.N.Y. cases that have, Petitioners contend, "followed the demand approach," Pet. Br. at 9. As the Court reads these cases, however, neither clearly endorses the demand approach across the range of arbitration-related court proceedings. See Wise v. Marriott Int'l, Inc., 06-cv-11439, 2007 WL 2200704, at *4 (S.D.N.Y. July 30, 2007) ("When a petitioner seeks confirmation or vacatur of an award, without seeking a remand for further arbitration proceedings, the amount in controversy is the value of the award itself to the petitioner. . . . When a petitioner seeks a vacatur of the award and a remand for further arbitration proceedings, this Court looks to the underlying amount claimed in the arbitration demand to determine the amount in controversy.") (internal quotation marks omitted); North Am. Thought Combine, Inc. v. Kelly, 249 F. Supp. 2d 283, 286 (S.D.N.Y. 2003) ("[A] court should look to the value of the relief requested in the arbitration complaint only where a defendant has prevailed in the arbitration. In all other situations, a court should look to the value of the award itself.").

11

arbitration. Further, even if the "demand approach" is correct, this does not mean that diversity of citizenship should be measured as of the date that arbitration begins, since considerations specific to the amount in controversy, and not applicable to diversity of citizenship, may be at work.[8] The Court therefore declines to evaluate diversity of citizenship so as to track some courts' "demand" approach to assessing the amount in controversy.

Petitioners additionally assert, in an argument that seems to be rooted in public policy, that assessing diversity of citizenship at the time the arbitration commences "would prevent forum shopping and gamesmanship by litigants who change residencies during the pendency of a dispute," Pet. Br. at 10. Moreover, in Petitioners' view, determining diversity of citizenship as of the date a petition is filed in court would "lead to situations where, during the course of an arbitration where, during the course of an arbitration, whether a federal court would have jurisdiction to hear motions to compel, stay, vacate or confirm could change, quite literally, day by day." Pet. Reply Br. at 3. The Court does not consider such a result

---

[8] For example, it may sometimes be appropriate to measure the amount of controversy based on the arbitration demand because this is the amount that a party to a particular type of subsequent court proceeding – for example, a motion to vacate the arbitral award and remand for further arbitration proceedings – continues to seek by way of the court proceeding. See Wise, 2007 WL 2200704, at *4.

12

to be nearly as problematic as Petitioners suggest. Moreover, there may well be a public policy argument in favor of finding that arbitration and court actions are distinct proceedings: a court action is not simply annexed to arbitration as an auxiliary or afterthought. Most importantly, the Court finds that the text of CPLR Article 75 and other provisions of New York law, as discussed supra, clearly support the conclusion that arbitration is neither an action nor a special proceeding, and so diversity of citizenship may not be assessed as of arbitration's commencement.

In the instant case, Petitioners do not dispute that when they filed their petition to vacate the arbitration in state court on December 18, 2015, the parties were diverse of citizenship. See Pet. Br. at 2-3. Further, no party disputes that any other elements of federal diversity jurisdiction are not satisfied. Accordingly, the Court finds that Respondent properly removed the petition to vacate to federal court on January 13, 2016. See 28 U.S.C. § 1441. The Court therefore denies Petitioners' motion to remand. The parties are directed to phone Chambers jointly within two business days to set oral argument on the cross-motions to confirm or to vacate the arbitration award.

The Clerk of Court is directed to close docket entry 14.

13

Dated:     New York, NY
           February 29, 2016                  _____
                                              JED S. RAKOFF, U.S.D.J.