UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
ODEON CAPITAL GROUP, LLC,                    :
MATHEW VAN ALSTYNE, and                      :
EVAN SCHWARTZBERG,                           :
                                             :       16 Civ. 274
        Petitioners,                         :
                                             :       <u>OPINION AND ORDER</u>
          -v-                                :
                                             :
BRET ACKERMAN,                               :
                                             :
        Respondent.                          :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        On November 19, 2015, an arbitration panel of the Financial

Industry Regulatory Authority ("FINRA") rendered an award of

$1,102,193 against Odeon Capital Group, LLC ("Odeon") and Odeon

employees Mathew Van Alstyne and Evan Schwartzberg

(collectively, "Petitioners"), and in favor of former Odeon

employee Bret Ackerman. <u>See</u> Amended Notice of Removal, Exhibit

1, Dkt. 4-1, FINRA Award. On December 18, 2015, Petitioners

moved in New York State court to vacate the arbitration panel's

award of unpaid wages to Mr. Ackerman, and to remand the unpaid

wages issue to a new FINRA arbitration panel. <u>See</u> Amended Notice

of Removal, Exhibit 1, Dkt. 4-1, Petition to Vacate an

Arbitration Award; Memorandum of Law in Support of Petition to

Vacate Arbitration Award ("Pet. Br."), Dkt. 4-5, at 31. On

January 13, 2016, Respondent Ackerman filed a notice of removal

1

to this Court, see Notice of Removal, Dkt. 1, and on February 1, 2016, filed a cross-motion to confirm the arbitration award in this Court. See Notice of Cross-Motion to Confirm Arbitration Award, Dkt. 6. Petitioners then moved to remand the matter to state court, but the Court denied that motion. See Opinion and Order dated February 29, 2016, Dkt. 21. Thereafter, the Court heard oral argument on the cross-motions to confirm and vacate the FINRA award. See Transcript of Proceedings dated April 4, 2016 ("Tr.").

Having now reviewed the parties' submissions and arguments, the Court hereby denies the petition to vacate the arbitration award and grants the motion to confirm the award.[1] The Court also denies Petitioners' application to amend their petition to add, as a ground for vacatur, that the award was procured by means of fraud.

By way of background, Respondent Ackerman worked as a bond trader for Odeon, a New York-based broker dealer, for approximately three years before he was discharged on March 10, 2014. See Pet. Br. at 1; Memorandum of Law in Opposition to

---

[1] As stated at oral argument, the Court struck the declaration of Respondent's counsel Paul Aloe except to the extent that this declaration attached the transcript of the arbitration hearing and any exhibits that were introduced or sought to be introduced at the arbitration hearing. See Tr. 2:11-15. "[D]eclarations of counsel are generally properly used only to describe the documents attached to them as exhibits for the Court's consideration . . . not to advance factual averments or legal arguments." Clark v. Kitt, No. 12-cv-8061, 2014 WL 4054284, at *7 (S.D.N.Y. Aug. 15, 2014), aff'd, 619 F. App'x 34 (2d Cir. 2015).

Motion to Vacate Arbitration Award and in Support of Cross-Motion to Confirm Award ("Resp. Br."), Dkt. 8, at 21; Amended Notice of Removal, Exhibit 1, First Amended Statement of Claims, at 3. On June 26, 2014, Mr. Ackerman filed a Statement of Claim with FINRA, asserting eleven causes of action against Petitioners, including breach of his employment agreement, disability discrimination, retaliation, and filing of a false termination notice (a Form U-5).[2] See FINRA Award at 2. Particularly relevant to the instant petition is that Mr. Ackerman alleged that he had been denied commissions to which he was entitled, so that he had not been paid wages that he had earned. See First Amended Statement of Claims at 2-5; Pet. Br. at 6-7.

FINRA held an arbitration hearing in front of a three-member panel over the course of six days between October 7, 2015 and October 15, 2015. See Pet. Br. at 6. In an award dated November 19, 2015,[3] the FINRA panel found in favor of Ackerman on his claims for unpaid wages and expungement of his Form U-5.[4] See

---

[2] Mr. Ackerman, in the arbitration proceedings, also brought claims against Bonwick Capital Partners LLC, but the arbitration panel denied these claims, and Bonwick is not part of the instant petition to vacate the arbitration award. See FINRA Award at 2; Pet. Br. at 6 n.4.

[3] The last of the arbitrators' signatures on the award is dated November 19, 2015. The award was served on November 20, 2015. See FINRA Award at 6.

[4] In the instant petition, Petitioners do not challenge the arbitration panel's ruling on Respondent's Form U-5. See Pet. Br. at 6 n.6.

FINRA Award at 2-3. The panel held Petitioners jointly and
severally liable for compensatory damages "based on unpaid
wages" in the amount of $1,102,193; interest on that award at
the rate of 9% per annum from November 1, 2012 until the award
is paid in full; attorneys' fees of $247,532; and costs of
$21,349.25. See id. at 2-3. The panel found in favor of
Petitioners on all of Mr. Ackerman's other claims. See id.

    The Federal Arbitration Act (FAA) provides that

    at any time within one year after the [arbitration]
    award is made any party to the arbitration may apply
    to the court . . . for an order confirming the award,
    and thereupon the court must grant such an order
    unless the award is vacated, modified, or corrected as
    prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9. Section 10 of the FAA states, in relevant part,
that a district court may vacate an arbitration award

    1) where the award was procured by corruption, fraud,
    or undue means; . . . (3) where the arbitrators were
    guilty of misconduct in refusing to postpone the
    hearing, upon sufficient cause shown, or in refusing
    to hear evidence pertinent and material to the
    controversy; or of any other misbehavior by which the
    rights of any party have been prejudiced.

9 U.S.C. § 10(a). Additionally, the Second Circuit recently
confirmed that it is still the law that "[a] court may also set
aside an arbitration award if it was rendered in manifest
disregard of the law." Zurich Am. Ins. Co. v. Team Tankers A.S.,
811 F.3d 584, 588 (2d Cir. 2016) (internal quotation marks
omitted).

For its part, the New York Civil Practice Law and Rules (CPLR), as applicable here,[5] provides that an arbitration award "shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds that the rights of that party were prejudiced by: (i) corruption, fraud or misconduct in procuring the award . . ." CPLR § 7511(b). The New York Court of Appeals has stated that "[o]ne form of misconduct is the refusal to hear pertinent and material evidence." Prof'l Staff Cong./City Univ. of New York v. Bd. of Higher Ed. of City of New York, 347 N.E.2d 918 (N.Y. 1976).

However, "[a] motion to vacate filed in a federal court is not an occasion for de novo review of an arbitral award." Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004). Likewise, under New York law, "judicial review of arbitration awards is extremely limited. An arbitration award must be upheld when the arbitrator offer[s] even a barely colorable justification for the outcome reached." Wien & Malkin LLP v. Helmsley-Spear, Inc.,

---

[5] Petitioners contend that New York law applies "[b]ecause Ackerman's employment contract . . . was specifically governed by New York law and because the Award is based on a New York wage statute," but indicate that as between New York and federal law, "which law governs does not impact the result" because the arbitration award must be vacated under both the FAA or the CPLR. See Pet. Br. at 20 n.14. Respondent argues that Petitioners' challenges to the arbitration award fail under either the FAA or New York law. See Resp. Br. at 4. Like the parties, the Court does not believe that the choice of federal or New York law materially affects the outcome of these cross-motions to vacate and confirm the arbitration award.

846 N.E.2d 1201, 1206 (N.Y. 2006) (quotation and internal citation omitted).

Here, Petitioners claim (1) that the arbitration panel committed misconduct in "refusing to hear evidence pertinent and material to the controversy" and in "refusing to postpone the hearing, upon sufficient cause shown," 9 U.S.C. § 10(a); and (2) that the arbitrators acted in manifest disregard of the law in rendering the wage award, calculating attorneys' fees, awarding prejudgment interest on the wage award beginning in November 2012, and imposing joint and several liability against the Petitioners without clarifying that Mr. Ackerman must first seek payment from Odeon before seeking recovery from Odeon's members Van Alstyne and Schwartzberg. See Pet. Br. at 19-31; Reply in Support of Petition to Vacate and in Opposition to Cross-Motion to Confirm Arbitration Award ("Pet. Reply Br.") at 8-9. Petitioners also seek to amend their original petition to include as an additional basis for vacatur that the award was "procured by corruption, fraud, or undue means" within the meaning of the FAA, 9 U.S.C. § 10(a). See Petitioners' Letter dated March 16, 2016, Dkt. 22 ("Pet. Letter"); Respondent's Letter dated March 22, 2016, Dkt. 23 ("Resp. Letter").

Turning to Petitioners' argument that the arbitrators committed misconduct in their evidentiary determinations, the

Second Circuit has held that "[c]ourts have interpreted section 10(a)(3) to mean that except when fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997); see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 (1987) (overruling a court's refusal to enforce an arbitration award when "assum[ing] that the arbitrator erred in refusing to consider the disputed evidence, his error was not in bad faith or so gross as to amount to affirmative misconduct."). In the instant case, Petitioners argue that the arbitrators committed misconduct, in essence, by permitting Mr. Ackerman to introduce damages calculations at late junctures in the proceedings and providing Petitioners with an inadequate opportunity to respond. These calculations identified the transactions as to which Mr. Ackerman believed he had been underpaid or not paid, and therefore affected the amount of unpaid wages that Mr. Ackerman was claiming. See Pet. Br. at 23.

Specifically, Petitioners allege that the arbitrators "ignor[ed]" Petitioners' motion, submitted on September 23, 2015, asking the arbitration panel to order Mr. Ackerman to list each of the transactions on which he believes he was not adequately paid and requesting that the panel hold a hearing on

7

this motion. See Pet. Br. at 23; Amended Notice of Removal, Exhibit 3. Petitioners further contend that the panel improperly admitted Mr. Ackerman's calculations and spreadsheets, reporting on unpaid wages, made at various allegedly tardy intervals: a 464-page spreadsheet, produced for the first time on September 21, 2015, identifying approximately 1,250 transactions for which Mr. Ackerman was claiming unpaid wages; a "summary sheet" produced on October 5, 2015 claiming to establish about $4.1 million in unpaid wages; and new wage damages models produced for the first time during the testimony of Mr. Ackerman's expert on the last day of the hearing. See Pet. Br. at 10, 12, 16.

Petitioners also argue that the arbitration panel did not allow them sufficient opportunity to protest Mr. Ackerman's late identification of damages claims at the beginning of the hearing, to review the documents presented on the last day of the arbitration, or to question Mr. Ackerman and his expert adequately on their calculations. See id. at 13, 16-18. Petitioners also fault the panel for not granting applications to adjourn parts of the hearing, made both in a letter dated September 28, 2015, and during the last day of the hearing. See id. at 11-12, 26-27. The denial of Petitioners' applications to postpone parts of the hearing constitute, in Petitioners' view, an additional ground for vacatur. See Pet. Br. at 26.

In the Court's view, however, Petitioners have not shown that the arbitration panel engaged in the kinds of violations of fundamental fairness that would warrant vacating the arbitration award on grounds of misconduct. For example, in the Court's view, the panel did not "ignor[e]" Petitioners' motion regarding Respondent's newly-produced materials, made on September 23, 2015. Rather, on October 1, 2015, the Chair of the arbitration panel indicated that she had not previously received this motion and that the panel would address Respondent's allegedly tardy identification of trades at the hearing itself, see Amended Notice of Removal, Exhibit 4. Despite the invitation, Petitioners' counsel failed to make any specific request to take up this matter at the outset of the hearing. See Aloe Declaration, Exhibit 31 (Respondent's Transcript of Arbitration Proceedings), at 6. Nonetheless, on the last day of the hearing, in response to Petitioners' objection to the introduction of a "new calculation formula," the Chair of the arbitration panel stated:

> I know we have heard this complaint before from [Petitioners], in fact asked to postpone the hearing because of it, the panel has discussed it . . . We think respondents did have the outline of what Mr. Ackerman was claiming . . . At least when you got the pre hearing brief, and the exhibits, which are customer based, and so you chose to craft your defense the way you have, which is fine, but we do not think you were deprived of the opportunity to confront his claims. . . . we think [Petitioners] have all the data

in your control. It was burdensome in your view to dig into it, but we do not see prejudice and so we are going to hear this.

See Aloe Declaration, Exhibit 31, 795-96.

According to the arbitration panel, therefore, Petitioners had access to information about the trades that Mr. Ackerman had executed and could have analyzed these transactions to determine whether, and to what degree, Mr. Ackerman was underpaid. This determination by the arbitrators also affected their willingness to allow Mr. Ackerman and his expert to present their damages calculations at several junctures soon before and during the hearing, as well as the arbitrators' view that Petitioners were not deprived of a sufficient opportunity to respond to Mr. Ackerman's damages claims.

The Court finds that the arbitrators, in making these determinations, engaged in no conduct rising to the level of a violation of "fundamental fairness." Tempo Shain Corp., 120 F.3d at 20. For instance, the parties vociferously contest responsibility for Respondent's identification of the relevant trades only on September 21, 2015.[6] While the Court does not find Respondent to be blameless in the timing of his production,

---

[6] Respondent Ackerman cites delays by Petitioners in providing him with access to discovery allegedly necessary to complete his trades analysis, see Resp. Br. at 8, while Petitioners argue that Mr. Ackerman had access to all the relevant information at the time he left Odeon's employ. See Reply in Support of Petition to Vacate and in Opposition to Cross-Motion to Confirm Arbitration Award ("Pet. Reply Br."), Dkt. 11, at 4.

Petitioners appear to have been on notice that Respondent Ackerman was contesting compensation for a wide array of trades since Respondent answered Petitioner's first request for production of information. There, Mr. Ackerman was asked to "[i]dentify any and all transactions for which you allege that [Petitioners] failed to provide you with proper commission compensation," and he responded that he "believes improper commission compensation was pervasive, however he will need to review [Petitioners'] documents and records to be specific." See Amended Notice of Removal, Exhibit 2. Against this background, the Court finds that the arbitrators did not make a "bad faith" or "gross" error, United Paperworkers Int'l Union, 484 U.S. at 40, in determining that Petitioners were not deprived of the opportunity to challenge Respondent's damages claims.[7]

The arbitrators' decision not to postpone the hearing also does not rise to the level of misconduct required to vacate an arbitration award. For example, while it appears that the arbitrators may have refused a request to postpone cross-examination of Mr. Ackerman's expert on the final day of the hearing, see Pet. Br. at 7-8, Declaration in Support of Petition

---

[7] Petitioners note that the Chair of the arbitration panel stated that the panel did not "want to hear testimony about the minutia of any trade." Amended Notice of Removal, Exhibit 4 (Petitioners' transcript of part of the arbitration hearing). See Pet. Br. at 16. This statement does not, however, vitiate the arbitrators' view that Petitioners could have crafted their defense to provide an alternative to Mr. Ackerman's damages assessment.

to Vacate and in Opposition to Cross-Motion to Confirm
Arbitration Award, Dkt. 12, Exhibit B, Petitioners' counsel
voluntarily ended his cross-examination of Mr. Ackerman's
expert. See Aloe Declaration, Exhibit 31, at 822, see also id.
at 824. The instant case presents nothing like the circumstances
in a case Petitioners cite, Tube & Steel Corp. of Am. v. Chicago
Carbon Steel Products, 319 F. Supp. 1302 (S.D.N.Y. 1970); see
Pet. Br. at 27. In that case, an arbitration award was vacated
when the arbitrators, having been advised that one of the
parties could not attend a hearing on a certain date, moved the
hearing to that date and then held the hearing without that
party present (though the party was invited to submit a written
statement). See Tube & Steel, 319 F. Supp. at 1302-03.

    In sum, the arbitrators did not necessarily make the same
determinations on the admission of evidence and timing that this
Court would have made if considering the issues de novo. But a
petition to vacate is not an occasion for de novo review. See
Wallace, 378 F.3d at 189.

    As to Petitioners' contention that the arbitrators
manifestly disregarded the law, in order for this doctrine to
apply the "governing law alleged to have been ignored by the
arbitrators [must have been] well defined, explicit, and clearly
applicable," and "[t]he arbitrator must appreciate the existence

of a clearly governing legal principle but decide to ignore or pay no attention to it." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002) (internal quotation marks and alterations omitted). An arbitration award "should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." Wallace, 378 F.3d at 190 (internal quotation marks omitted).

In the instant case, no showing of manifest disregard has been made. Though Petitioners argue that the wage award was "speculative," see Pet. Br. at 28-30, the arbitrators did not manifestly disregard any settled legal principle in rendering it. See Kurt Orban Co. v. Angeles Metal Sys., 573 F.2d 739, 740 (2d Cir. 1978) ("Arbitrators are not required to disclose the basis upon which their awards are made . . . In the absence of any indication that the award was made in manifest disregard of the law, . . . courts will not look beyond the lump sum award in an attempt to analyze the reasoning processes of the arbitrators . . . If a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed.") (internal quotation marks omitted).[8] The Court cannot find that the arbitrators here lacked a "barely colorable justification"

---

[8] In this case, it does not appear that either party requested a reasoned award from the arbitrators. See Resp. Br. at 17; Aloe Declaration, Exhibit 31, at 854; Tr. 40:1-14.

for awarding Mr. Ackerman $1,102,193 as compensation for his
unpaid wages.

Further, the panel did not manifestly disregard the law in
selecting November 1, 2012 – roughly a midpoint in Mr.
Ackerman's employment with Odeon – as a "reasonable intermediate
date" from which to award prejudgment interest. See CPLR §
5001(b); Arbitration Award at 3. The same is true of the
attorneys' fees award. Petitioners argue that the arbitration
panel manifestly disregarded the law by awarding all attorneys'
fees requested by Mr. Ackerman's counsel at Kudman Trachten Aloe
LLP, even though Mr. Ackerman recovered on only one damages
claim out of eleven causes of action. See Pet. Br. at 30.
However, "[a] crucial factor underlying the determination
whether a full award of attorney's fees is appropriate where a
party has succeeded on only some of his claims, is the degree to
which the meritorious claims are clearly separable from the
unsuccessful ones." McCann v. Coughlin, 698 F.2d 112, 129-30 (2d
Cir. 1983). The arbitration panel had at least a "barely
colorable justification," Wallace, 378 F.3d at 190, for
concluding that Mr. Ackerman's claims were not clearly
separable.

In their reply brief, Petitioners contend that the
arbitration award should be modified to clarify that Mr.

14

Ackerman must seek payment from Odeon (a Limited Liability Corporation) before pursuing payment from LLC members Mr. Van Alstyne and Mr. Schwartzberg. See Pet. Reply Br. at 8-9, citing New York Limited Liability Corporation Law § 609(c). However, "new arguments may not be made in a reply brief." Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999). Even beyond this point, the Court is not persuaded that the process set out in Section 609 of the New York LLC statute applies to Petitioners Van Alstyne and Schwartzberg, who are being held liable based on their status as Mr. Ackerman's "employers" within the meaning of the New York Labor Law. See Reply Memorandum of Law in Further Support of Cross-Motion to Confirm Arbitration Award ("Resp. Reply Br.") at 8-9; N.Y. Lab. Law § 190(3).

Petitioners next seek to amend their petition to vacate to include the argument that the arbitration award was "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a); Pet. Letter. But an arbitration award should "stand unless it is made abundantly clear that it was obtained through corruption, fraud, or undue means." Karppinen v. Karl Kiefer Mach. Co., 187 F.2d 32, 34 (2d Cir. 1951) (internal quotation marks omitted). In particular, in order to establish that an arbitration award was procured through fraud, Petitioners must show that Respondent

15

"engaged in fraudulent activity"; "that the fraud was material
to an issue in dispute during the arbitration"; and "that [they]
could not have discovered the fraud before or during the
arbitration proceeding through the exercise of due diligence."
Hakala v. Deutsche Bank AG, No. 01-cv-3366, 2004 WL 1057788, at
*3 (S.D.N.Y. May 11, 2004).

    According to Petitioners, Mr. Ackerman committed perjury in
front of the arbitration panel by testifying, in response to the
arbitrators' questions, that a FINRA investigation into some of
his bond transactions was not still pending, and that FINRA took
no action regarding these trades. See Pet. Letter at 3-4. In
fact, Petitioners state, the FINRA investigation was still
pending, and on February 22, 2016, Mr. Ackerman executed a
Letter of Acceptance, Waiver and Consent with FINRA, in which he
acknowledged that he had refused to appear for testimony in
front of FINRA and agreed to be barred "from association with
any FINRA member in any capacity." See Pet. Letter at 4; Pet.
Letter, Exhibit A, Dkt. 23-1. Petitioners assert that Mr.
Ackerman's allegedly false testimony bolstered his credibility
in front of the arbitration panel, making them more likely to
accept his assessment of the compensation he believed he was
owed. See Pet. Letter at 5. Respondent challenges Petitioners'
view that Mr. Ackerman's testimony was perjurious, contending

that Mr. Ackerman believed at the time of the arbitration hearing that the FINRA investigation was over, since he had not heard from FINRA since April 2014. See Resp. Letter at 2-3. Respondent also contends that the Acceptance, Waiver and Consent "has no bearing on the arbitration award." Resp. Letter at 3.

In the Court's view, the crucial issue is whether any allegedly false testimony by Mr. Ackerman was material to the arbitration panel's award of damages for unpaid wages, which Petitioners are contesting in the instant petition to vacate the award. The Court finds that Mr. Ackerman's testimony regarding the FINRA investigation was not material to the award. In particular, the Court finds implausible Petitioners' suggestion that Mr. Ackerman's responses to questions about the FINRA investigation materially bolstered Mr. Ackerman's credibility in making an unpaid wages claim to which the FINRA matter does not relate. The Court therefore declines to permit Respondent to amend its petition to include as a ground that the arbitration award was procured by means of fraud. The Court hence denies Petitioners' petition to vacate the award in its entirety. Since the Court has decided not to vacate or modify the arbitration award, the Court must grant Respondent's petition to confirm the award, and so it hereby does. See 9 U.S.C. § 9.

Respondent seeks an award of attorneys' fees and costs

17

incurred in the current proceeding to confirm the arbitration award. See Resp. Br. at 25. Pursuant to Fed. R. Civ. P. 54(d)(1), the Court awards Respondent costs; but since Petitioners did not act "without justification" in seeking to vacate the arbitration award, the Court denies Respondent's request for an award of attorneys' fees incurred in seeking the arbitration award's confirmation. See Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985). Accordingly, Respondent's counsel is directed to submit, within three business days, a calculation of prejudgment interest and a tabulation of costs incurred in responding to the instant motion to vacate. Petitioner's counsel may submit any response three business days afterward. After reviewing these submissions, the Court will enter final judgment.

The Clerk of Court is directed to close docket entries 6 and 22.

Dated:   New York, NY
         April 25, 2016

JED S. RAKOFF, U.S.D.J.

18